## LAMB et al. v. EWING.

### (Circuit Court of Appeals, Eighth Circuit. January 27, 1893.)

#### No. 110.

1. FEDERAL COURTS—JURISDICTION—AUXILIARY PROCEEDINGS.
    On the expiration of a stay bond the lands of the surety thereon were sold on execution to satisfy the judgment, as allowed by the Nebraska statute, but, in view of a threatened appeal by the surety, the judgment creditor was required as a prerequisite to obtaining the money to give a bond conditioned for repayment thereof "in case the order confirming the sale is reversed by the supreme court of the United States." No appeal, however, was taken, but the purchaser of the land brought eject-ment to recover it of the stay bondsman, and the supreme court of the United States held that the Nebraska statute did not apply, and the sale was void. Thereupon the court ordered the judgment creditor to re-pay the money into court, and assigned the redelivery bond to the pur-chaser of the land. The order was not complied with, and thereafter the purchaser filed a petition on the bond in the same court. *Held*, that this proceeding was merely auxiliary to the former suit, and the federal court had jurisdiction, irrespective of the citizenship of the parties or the amount in controversy.

2. BONDS—CONDITION—BREACH.
    The condition of the bond was broken when the supreme court de-clared the sale void, although that decision was rendered in an independ-ent suit, and no appeal was taken from the judgment confirming the sale.

3. SAME—LIMITATION OF ACTIONS.
    The fact that the sale was absolutely void did not operate as a breach of the condition of the bond as soon as it was given, so as to immedi-ately set the statute of limitations running, but such breach only oc-

curred at the time the decision of the supreme court in the ejectment
suit was rendered.

**4. SAME—POWERS OF FEDERAL COURT.**

As the court would have had power to order restitution when the sale
was declared invalid if the proceeds thereof had remained in the court,
it also had power to require the judgment creditor to give the bond for
its repayment into court in the same contingency, and hence the .pur-
chaser whose money had been wrongfully appropriated to the satisfac-
tion of the judgment could maintain a suit on the bond to recover the
same.

In Error to the Circuit Court of the United States for the District
of Nebraska.

Action by Thomas Ewing against Walter J. Lamb and Lorenzo
W. Billingsley upon a bond given for the repayment of money into
court. Judgment for plaintiff. Defendants bring error. Affirmed.

Statement by SHIRAS, District Judge:

On the trial of this case in the court below a jury was waived, and from the
findings of fact made by the court the following statement is condensed,
sufficient of the material facts being stated to show the applicability of the
points made by counsel in support of the errors assigned:

On the 17th of November, 1875, Charles W. Seymore and William W. Wardell
recovered judgment in an action at law against William P. Young for the sum
of $6,500 in the United States circuit court for the district of Nebraska.
Upon the assumption that the provisions of the statutes of Nebraska authoriz-
ing a stay of execution upon giving security as therein provided could be
availed of by a defendant in the United States courts in Nebraska, a stay
bond was executed by William P. Young, with five sureties, including one
Milton F. Lamaster, and filed with the clerk. Upon the expiration of the
time of the stay of execution, as provided for by the statutes of the
state, and in accordance with the provisions thereof, the clerk issued an
execution against William P. Young and the several sureties on the stay
bond, which writ was by the marshal levied upon certain realty belonging to
Milton F. Lamaster, one of the sureties on the bond; and a sale of the
property was had in due form, the same being purchased by Thomas Ewing
for the sum of $5,600. Upon a report made of this sale to the court, the same
was confirmed, and a marshal's deed was executed and delivered to the
purchaser, and an order was entered directing the marshal, upon the execu-
tion of a good and sufficient bond, to be approved by the judge or clerk,
and conditioned for the repayment into court of the purchase money in case
the order confirming the sale should be reversed by the supreme court, to
pay to the several claimants the share due them of the money realized from
the sale of the realty as stated. It further appears that by an assignment
duly made by the plaintiffs in the judgment against William P. Young there
had been assigned to S. W. Little and D. B. Alexander an interest therein
to the amount of $2,000. It further appears that the marshal paid over to
the clerk of the court the money by him collected on the execution sale of
the property of Lamaster, as above stated, and for the purpose of obtaining
from the clerk the amount due them as assignees of part of said judgment
against Young the following bond was executed by S. W. Little and D. B.
Alexander, with Walter J. Lamb and Lorenzo W. Billingsley as sureties:

"In the Circuit Court of the United States for the District of Nebraska.

"Charles W. Seymore and William W. Wardell, Plaintiffs, vs. William P.
Young, Defendant.

"Bond for the Repayment of Money into Court.

"Know all men by these presents that we, S. W. Little and D. B. Alexander,
as principals, and W. J. Lamb and L. W. Billingsley, as sureties, of Lancaster
county, state of Nebraska, are held and firmly bound unto Elmer D. Frank,
clerk of the United States circuit court for the district of Nebraska, in the
sum of thirty-four hundred dollars, good and lawful money of the United

States, to be paid to the said Elmer D. Frank, clerk of the United States court, as aforesaid, his executors, administrators, and assigns, for which payment, well and truly to be made, we bind ourselves, our heirs, our executors, and administrators firmly by these presents. Sealed with our seals, and dated the 3rd day of May, A. D. 1884. The condition of the above obligation is such that whereas, on the 29th day of January, A. D. 1882, Hon. Elmer S. Dundy, judge of the circuit court of the United States for the district of Nebraska, made the following order in the above-entitled cause, then pending in said court, to wit:

"'Seymore & Wardell v. Young.    138 C.

"'It is ordered in the above case that upon giving a good and sufficient bond to the approval of the judge or clerk, conditioned for the repayment into court of the purchase money in case the order of confirmation in this case is reversed by the supreme court of the United States, the marshal pay to the said complainant from the purchase money received in said case to each one entitled thereto, as his or her interest may appear, bond to be given in double the amount of money to be paid to any person or party entitled to the same, and the marshal is further directed to make and deliver to the purchaser.

[Signed]                                    "'Elmer S. Dundy, Judge.'

"And whereas, it appears from the records of said court in said cause that S. W. Little and D. B. Alexander are entitled to receive the sum of $1,485 of said purchase money; and whereas, the United States marshal of said court has paid all of said purchase money into the hands of the clerk of said court, and by him placed in the registry of said court since said order was made; and whereas, the said Elmer D. Frank, clerk of said court, has this day paid to the said S. W. Little and D. B. Alexander out of said purchase money the said sum of fourteen hundred and eighty-five dollars upon the terms of the above and foregoing order of the said court: Now if the above S. W. Little and D. B. Alexander, as principals, and W. J. Lamb and L. W. Billingsley, as sureties, shall well and truly comply with the order of said court as hereinbefore set forth in relation to the said sum of fourteen hundred and eighty-five dollars, received as aforesaid by the said S. W. Little and D. B. Alexander, then this obligation to be void; otherwise to remain in full force and effect. All erasures and interlineations made before signing."

Upon the filing and approval of this bond, the court made an order directing the clerk to pay to said Little and Alexander, out of the funds in the registry of the court, the proportionate share coming to them as owners of the interest assigned them in the original judgment, and in pursuance of this order the clerk paid them the sum of $1,485.

On the 17th of July, 1882, Thomas Ewing, for the consideration of $5,600, sold and conveyed the realty by him bought at the marshal's sale to John W. Keeler, warranting his title thereto. Thereupon Keeler brought an action of ejectment in the United States circuit court for the district of Nebraska against Lamaster, claiming title to the land through the proceedings hereinbefore recited, and in the circuit court obtained judgment in his favor. The case was carried by writ of error to the supreme court of the United States, and the judgment below was reversed, the court holding that the provisions of the state statute of Nebraska, adopted in 1875, in regard to a stay of execution, including the mode of extending the judgment against the sureties on the bond, and issuing execution against their property in case of default, not being in force when section 916 of the Revised Statutes of the United States was enacted, and never having been adopted by a rule of the federal court, did not, therefore, authorize the act of the clerk of the circuit court in extending the judgment against the sureties on the bond, and, as a consequence, the issuance of execution and the levy on the property of the surety, and the sale thereof, were wholly void, and conveyed no title to Ewing, the purchaser, or to his grantee, Keeler. See Lamaster v. Keeler, 123 U. S. 376, 8 Sup. Ct. Rep. 197. No direct action, by appeal to the supreme court or otherwise, was taken in the case of Charles W. Seymore and William W. Wardell to vacate or reverse the order confirming the sale made by the marshal.

Upon the rendition of the judgment of the supreme court, holding that the sale and deed of the realty to Ewing were wholly void, and conveyed to him no title therein, Ewing made a settlement in full with his grantee, Keeler, repaying him the sum due him under the covenants of warranty contained in the deed to him. After the mandate from the supreme court was filed in the circuit court in the case of Lamaster v. Keeler, a motion was made in the original case of Charles W. Seymore and William W. Wardell v. William P. Young for an order directing the repayment into court of the sum of $1,485, being the amount paid out of the registry of the court to S. W. Little and D. B. Alexander; and the court, after reciting the facts at length, made an order directing that said sum should be paid into court by the parties executing the bond. It appearing to the court that Thomas Ewing was entitled, as a beneficiary, to enforce performance of the conditions of the bond hereinbefore set forth, the court made an order directing that said bond should be assigned and set over to said Ewing, which was accordingly done by the clerk of the court, under the seal thereof.

The parties to the bond having failed to pay into court the sum ordered, or any part thereof, thereupon, on the 19th of February, 1891, a petition was filed in said circuit court of the United States by Thomas Ewing, and against the principals and sureties in said bond, in which was recited at length the facts leading up to the execution of the bond, and the other facts herein stated, including the orders of the court made in the premises; and judgment was prayed against the parties to the bond in the sum of $1,485, interest and costs. To this petition the sureties on the bond, Walter J. Lamb and Lorenzo W. Billingsley, entered their appearance, and filed an answer thereto, wherein they denied the jurisdiction of the court, pleaded the statute of limitations, averred that the bond by them executed was taken without authority of law, and was wholly void, and that, if valid, the condition thereof had not been broken, because the order of confirmation of sale had not been taken before the supreme court in any direct proceeding, nor had the same been reversed by the supreme court. The trial court found in favor of the petitioner, and gave judgment for the sum of $1,485, interest and costs, against the sureties on the bond, to reverse which the case has been brought to this court by writ of error sued out by the sureties on the bond.

Walter J. Lamb and Lorenzo W. Billingsley, (J. R. Webster, on the brief,) for plaintiffs in error.

R. D. Stearns, (Stearns & Strode, on the brief,) for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge, (after stating the facts.) The objections taken to the jurisdiction of the circuit court are based upon the fact that the plaintiff and defendants below are all citizens of the state of Nebraska, and the amount in controversy is less than $2,000. If this proceeding was an independent action, unconnected with any other case in the circuit court, and in which, therefore, the jurisdiction of the court would depend upon the diverse citizenship of the parties to the petition and the amount thereby put in controversy, the lack of jurisdiction of the circuit court would be made clearly apparent. The facts shown in the record, however, prove beyond question that this proceeding is one ancillary to the original action of Charles W. Seymore and William W. Wardell v. William P. Young, and the jurisdiction of the court over that case, which is unquestioned, supports the jurisdiction over the proceedings subsequently brought upon the bond given under the circumstances hereinbefore stated.

The rule is well settled that where a court rightfully takes jurisdiction over the parties and the subject-matter of a controversy it has the right not only to render judgment in the first instance, but also to secure to the prevailing party the fruits of such judgment, and the original jurisdiction is a continuing one for that purpose; and as corollaries to the general rule it is also equally well settled that, where third parties have rights in or claims to property taken into the possession of the court under process issued against the original parties, such third parties may intervene in the proceedings for the protection of their rights; and, further, that where the process of the court is wrongfully and illegally used to the injury of a third party, the latter may appeal to the court for proper redress. If the federal courts were deprived of the power to protect third parties against injuries resulting from the enforcement of process issuing from such courts by reason of the citizenship of the injured party, or because the amount of the injury was less than $2,000, it would work great hardship upon the individual citizen, and be a most serious blot upon the system of federal jurisprudence. The power of the courts of the United States in these particulars is as ample as that of the courts of the states, and the technical question of jurisdiction is solved by the ruling that in all ancillary or auxiliary proceedings for the enforcement of judgments rendered, and in proceedings for the protection of the rights of third parties, the jurisdiction is supported by that of the original action or suit. Minnesota Co. v. St. Paul Co., 2 Wall. 609; Wiswall v. Sampson, 14 How. 52; Freeman v. Howe, 24 How. 450; Gumbel v. Pitkin, 124 U. S. 146, 8 Sup. Ct. Rep. 379; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. Rep. 27; Fuel Co. v. Brock, 139 U. S. 216, 11 Sup. Ct. Rep. 523.

The next question presented by the errors assigned is that arising on the plea of the statute of limitations, the contention of the plaintiffs in error being that the right to sue upon the bond accrued as soon as it was executed, for the reason that it has been decided that the judgment upon which the land was sold was void, and not merely voidable. The purpose of the bond was to secure the repayment into court of the money received from the sale of the realty in case it should be determined by the supreme court that the sale could not stand. If the question of the validity of the sale had never been carried in any mode to the supreme court, and Ewing's claim to the land had never been questioned, certainly no ground for demanding the repayment of the money into court would then have existed, and it certainly would not have been in accordance with justice for the court to compel the repayment of the money into court, so long as Ewing's title to the land remained undisputed. So long, also, as the question of the validity of the sale of the realty to Ewing was in fact pending before the supreme court, no action could have been maintained on the bond, because, according to its terms, the court had no right to demand repayment unless the order of confirmation of the sale of the realty should be reversed by the supreme court. It was not, therefore, until that court decided the question of the invalidity of the sale of the realty that any right of action accrued on the bond given to secure the repayment into court of the money

derived from the sale of the realty, and, as the petition against plaintiffs in error was filed and service thereon was had within the statutory period, dating from the rendition of the judgment of the supreme court, which settled the invalidity of the sale of the realty, it follows that the plea of the statute cannot be sustained.

A further defense is based upon the claim that the bond itself is void, and that its execution and delivery created no obligation against the parties signing the same. The contention of plaintiffs in error is that when an execution issues upon a judgment at law, and the officer, by an execution sale of real estate, collects a sum of money to be applied in satisfaction, in whole or in part, of the judgment, the court has not the power to require of the judgment creditor, as a condition of the payment of the money to him, the execution of a bond for the return of the money in case the judgment is reversed or is held void. Counsel for plaintiffs in error cite a number of authorities which sustain the proposition that at execution sales of realty the rule caveat emptor applies, and that in case of a failure of title the purchaser cannot look to the judgment creditor for reimbursement. These are cases wherein the judgment debtor had no interest in the property levied on, and therefore, in fact, the purchaser took nothing by his purchase. In the case now before us, the realty levied on and sold was in fact the property of the judgment debtor, Lamaster; and, if the judgment upon which the process issued had not been wholly void, the purchaser would have acquired title. The rule of caveat emptor, invoked by plaintiffs in error, is not applicable to a case like that now under consideration. It is well settled that if a judgment upon which an execution has issued and has been returned satisfied is subsequently reversed, the plaintiff therein will be compelled to account for the property or money which he may have received by reason of the judgment which is reversed. In such cases, there is not a failure of the title of the judgment debtor to the property levied on, but a failure in the right of the judgment creditor to demand anything by reason of his judgment, either by way of future satisfaction thereof or by way of retaining any money or property which he may have obtained in the past. The right to restitution in case of a reversal of the judgment cannot be gainsaid, the only question being as to the mode applicable to the facts of the particular case. Bank of U. S. v. Bank of Washington, 6 Pet. 8; Fuel Co. v. Brock, 139 U. S. 216, 11 Sup. Ct. Rep. 523.

If the money paid through the marshal into the registry of the court by the defendant in error was still in the registry, could there be any possible question of the duty of the court in the premises? The plaintiffs in error certainly could not claim it as judgment creditors, for their judgment is reversed, and adjudged to be wholly void. Lamaster could not claim it, for he never had any interest in it or right to it, nor does it represent his property. Clearly the only one to whom it could be rightfully paid would be the defendant in error, Ewing; and certainly, under the supposed circumstances, the court, upon motion or petition of Ewing, would order the money to be paid to him. It is said by the supreme court in

Fuel Co. v. Brock, supra, that "the power is inherent in every court, whilst the subject of controversy is in its custody, and the parties are before it, to undo what it had no authority to do originally, and in which it therefore acted erroneously, and to restore, as far as possible, the parties to their former position. Jurisdiction to correct what had been wrongfully done must remain with the court so long as the parties and the case are properly before it, either in the first instance or when remanded to it by an appellate tribunal." Therefore, when the supreme court held that the circuit court had no jurisdiction to extend the judgment in the case of Charles W. Seymore and William W. Wardell v. William P. Young against Lamaster, nor to issue execution against his property, it became the duty of the circuit court to restore the parties, if possible, to their former position, and undo all that had been wrongfully done in the attempted enforcement of the void judgment. If the circuit court had exacted from the judgment creditors a bond which bound them in terms to return the money collected on their judgment in case the title of Lamaster failed to the land sold to Ewing, then the authorities cited on behalf of plaintiffs in error would be applicable, because then the question would be whether the judgment creditors could be compelled to return the money paid by the purchaser; and, if no such obligation would rest upon the judgment creditors in the absence of a bond to that effect, it may be that the exaction of a bond would be held to be nugatory, and the bond itself to be void. We, however, are not called upon to determine this question, as it is not presented by the record now before us. In the present case the judgment to satisfy which the money was paid into court, and by the court to the judgment creditors, has been held to be wholly void. It thus appears that they have received, by means of the process of the court, issued without authority, a sum of money to which they are not entitled. It is their duty to make restitution of the money thus wrongfully received by them.

The terms of the bond, read in the light of its attending circumstances, do not impose upon the principals in the bond any duty or obligation greater than that which would exist against them in the absence of the bond. In fact, when the judgment creditors, S. W. Little and D. B. Alexander, received from the registry of the court the money collected on the judgment extended against Lamaster, the law imposed upon them the duty and implied obligation to repay the money in case the judgment in their favor should prove to be invalid and void. These parties were nonresidents of the state of Nebraska. It was known to the circuit court, and then appeared upon its records, that the validity of the judgment against Lamaster was denied, and steps were being taken to carry the question to the supreme court. When, under these circumstances, the court was asked to pay out the money in its hands, it was at once apparent that by so doing the court, in the event the judgment was held void, would be deprived of the power to cause restitution to be made to the proper parties, because both the fund and the parties might be beyond its control. To avoid this, the court required the parties to execute the bond in question, whereby they

became bound to repay the money in case the judgment against Lamaster should be held to be void, and thus the court continued its power to compel restitution to be made in case the right thereto should arise. We find nothing in the action of the circuit court in this particular which was illegal in itself, or which imposed upon the judgment creditors burdens of such a nature as to render the bond of no effect.

As a further and final defense it is claimed by plaintiffs in error that the condition of the bond has not been broken; that, as sureties, they are entitled to stand upon the very letter of the obligation signed by them, and cannot be called upon for the repayment into court of the purchase money, unless it is shown that the order of confirmation of the sale of the realty to Ewing has been reversed by the supreme court, which it is claimed has not been done. It is a settled rule that the liability of a surety is not, by implication or by a strained construction of the terms of the contract of suretyship, to be extended unfairly. The surety has the right to stand upon the terms of the contract entered into by him. In determining, however, the true intent and meaning of the contract of suretyship, the same general rules of construction are applicable that obtain in construing other written instruments. As is said in Brandt, Sur. § 80:

"The rules for construing the contract of a surety or a guarantor should by no means be confounded with the rule that sureties and guarantors are favorites of the law, and have a right to stand upon the strict terms of their obligations. There is no legal prohibition against entering into a contract of suretyship or guaranty. For any contract which it is legal to make it is legal that a surety or guarantor shall become responsible. In the construction of the contract of a surety or guarantor, as well as of every other contract, the true question is, what was the intention of the parties, as disclosed by the instrument, read in the light of the surrounding circumstances? The contract of the surety or guarantor being just as legal as that of the principal, there is no good reason for holding that, in arriving at the intention of the parties, one set of rules shall govern when the principal and another when the surety or guarantor is concerned."

In Benjamin v. Hillard, 23 How. 149, 164, it is said:

"The general rule is to attribute to the obligation of the surety the same extent as that of the principal. Unless from the terms of the contract an intention appears to reduce his liability within more narrow bounds, a restriction will not be imposed by construction contrary to the nature of the engagement. If the terms of his engagement are general and unrestricted, and embrace the entire subject, (omnem causam,) his liability will be measured by that of the principal, and embrace the same accessories and consequences, (connexoram et dependentium.) It will be presumed that he had in view the guaranty of the obligations his principal had assumed."

In Read v. Bowman, 2 Wall. 591, 603, the rule is stated as follows:

"Defendants are right in supposing that a surety may stand upon the very terms of his contract; that he will be discharged if any alteration is made in his agreement without his knowledge or consent, which prejudices him, or which amounts to the substitution of a new agreement for the one he executed. But sureties are as much bound by the true intent and meaning of their contracts which they voluntarily subscribe as principals. They are bound in the manner, to the extent, and under the circumstances as they existed when the contract was executed."

What, then, is the construction to be placed on the terms of the bond executed by plaintiffs in error, reading the same in the light thrown thereon by the circumstances existing when the bond was executed, and which in fact called it into existence. A fund was under the control of the court, realized from the sale of certain realty under process issued by the court. The validity of the sale was contested. The circuit court had sustained the sale, but the parties proposed to carry the question to the supreme court for final adjudication. If the circuit court had retained the money realized from the sale until the validity of the sale had been finally settled, it would then have been within the power of the court, and it clearly would have been its duty, to cause the money in the registry to be paid to the party entitled thereto. Instead, however, of retaining the money in the registry of the court, it was ordered that any claimant thereof might receive the share to which he was apparently entitled by giving a bond to the court, with sureties, conditioned to repay the sum by him received in case the order of confirmation should be reversed by the supreme court. It is entirely clear that the bond was intended to take the place of the money, and that it was the purpose thereof to enable the court to compel the repayment into court of the sum paid out in case the supreme court should reverse the decision of the circuit court upon the question of the validity of the sale. It is said in argument that the condition of the bond has not been broken, because the invalidity of the sale of the realty has not been adjudged in a direct appeal from the order of confirmation. This is not the requirement of the bond in express terms. The order of the court, which is recited in the bond, is to the effect that the bond shall be "conditioned for the repayment into court of the purchase money in case the order of confirmation in this case is reversed by the supreme court of the United States." No particular mode of carrying the question of the confirmation of the sale before the supreme court is named, nor was it a matter which was within the control of any of the parties to the bond. The mere method adopted was therefore wholly immaterial, so long as it compassed the purpose of submitting for decision to the supreme court the question upon which the duty of repayment of the money depended.

If the money was still in the registry of the circuit court, could it be successfully contended that it was not the duty of that court to order the repayment thereof to the defendant in error simply because the invalidity of the sale had been adjudged in the ejectment suit, and not in a direct appeal from the order of confirmation? This would certainly be sticking in the bark. By the decision of the supreme court in the ejectment proceedings based upon the supposed title created by the sale in question it was judicially and finally determined that the entire proceedings against Lamaster in the circuit court, including the sale of his property, were wholly void for want of jurisdiction. The issuance of the execution, the levy thereof, and the sale of the property and the order confirming the sale, were all held to be void acts; not voidable, but wholly void. Under such circumstances, it is useless to argue that to create a duty

to repay the money according to the terms of the bond it was necessary to enter a formal order reversing the confirmation of the sale. The decision and judgment of the supreme court in the ejectment suit had set aside and reversed the sale and the order confirming it by holding the same to be wholly void, and thereupon it became the duty of the circuit court to undo as far as possible all the wrong that had resulted from its mistaken action. It likewise became the duty of the principals in the bond to repay into court the sum of money which had been wrongfully paid them. The terms of the bond, fairly construed, bound them for this repayment. The obligation they had assumed in giving the bond was that, if the supreme court should reverse the confirmation of the sale of Lamaster's property, they would repay the money realized from such sale. The order of confirmation was most effectually reversed by the ruling of the supreme court that the whole proceeding against Lamaster was void and of no effect, and the obligation of the principals in the bond to repay into court the money wrongfully paid them became fixed according to the terms of the bond; and when the court called upon them for repayment of the amount by them received, as was done by the order entered December 22, 1890, and the principals in the bond failed to make such payment, then the condition of the bond was broken, and a right of action existed against the sureties for such default on part of their principals.

We have thus considered the substantial points made on behalf of the plaintiffs in error, and, finding them without merit, the judgment of the circuit court is affirmed.