### WILKINSON v. WALKER et al.

### SAME v. MASSACHUSETTS BONDING & INS. CO. et al.

(District Court, N. D. Texas, Fort Worth Division. September 15, 1923.)

Nos. 985, 986.

1. **Bankruptcy ⊙112—Referee authorized, pending review of order appointing receiver, to take bond for delivery of property by bankrupt.**

Under Bankruptcy Act, § 2 (Comp. St. § 9586), authorizing the court to appoint receivers, and to make such orders in addition to those specifically provided for as shall be necessary for enforcement of the provisions of the act, and section 38 (Comp. St. § 9622), giving referees power to make orders, subject to review by the judge, a referee, who has made an order appointing a receiver, may stay proceedings thereon pending its review, and may take a bond for delivery of the property by the bankrupt in case the order is affirmed.

2. **Bankruptcy ⊙101—Order appointing receiver places property of bankrupt in possession of the court.**

An order appointing a receiver for the property of an alleged bankrupt effects a sequestration, and places the property in the custody of the court.

3. **Bankruptcy ⊙22—Orders in bankruptcy and rules of court have effect of statute.**

General orders in bankruptcy and rules of the court adopted in accordance therewith have the same force as provisions of the statute.

4. **Courts ⊙295—Action on bond taken in bankruptcy proceedings held within jurisdiction of District Court; "arising under the laws of United States."**

Bonds taken pending review of orders appointing a receiver for the property of a bankrupt, conditioned for its delivery to the receiver or trustee in case of affirmance of the order, affect property which at the time they were given was in exclusive possession of the District Court, and an action for breach of such bond is one "arising under the laws of the United States," of which that court has jurisdiction, regardless of the citizenship of the parties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Arise—Arising.]

At Law. Actions by W. W. Wilkinson, trustee in bankruptcy of the Walker Grain Company, against J. L. Walker and others, and against the Massachusetts Bonding & Insurance Company and others. On motions by defendants to dismiss. Denied.

Stanley Boykin, of Forth Worth, Tex., for plaintiff.

J. A. Templeton and Clay Cooke, both of Fort Worth, Tex., for defendants.

---

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ATWELL, District Judge. The plaintiff sues as the trustee of the Walker Grain Company, bankrupt, for recovery on a $25,000 bond in the first suit and for recovery on a $40,000 bond in the second suit. The plaintiff and the defendant in the first suit are residents of Tarrant county, Tex.; the plaintiff and the defendant J. L. Walker, in the second suit, are residents of Tarrant county, Tex., and the defendant Massachusetts Bonding & Insurance Company is a foreign corporation having an office and an agent in Tarrant county, Tex.

On the 7th day of October, 1918, the referee, upon an involuntary petition in bankruptcy against the Walker Grain Company, filed on August 16, 1918, appointed the plaintiff receiver for the said Walker Grain Company pending adjudication. Wilkinson qualified as such receiver, and was ordered by the referee to take charge of all of the assets and property of the said Walker Grain Company and administer its affairs under the orders of the referee, pending such adjudication in bankruptcy. Before the receiver could take charge of such property and assets, the bankrupt filed a petition for a review of the said order appointing said receiver, by the District Court, and pending the review of said order by said court the referee, upon petition of the Walker Grain Company, granted a stay of said receivership proceedings, conditioned upon the giving by the said Walker Grain Company of a good and sufficient forthcoming bond. In compliance with said order bond was given, reading as follows:

"In the District Court of the United States for the Northern District of Texas, at Fort Worth.

"In the matter of Walker Grain Company, Bankrupt. No. 1001, Bankruptcy.

"Know all men by these presents, that we, Walker Grain Company, as principal, and the subscribers hereto, as sureties, are held and firmly bound unto the United States of America in the full and just sum of twenty-five thousand ($25,000.00) dollars, to be paid to the said United States of America for the benefit of the petitioning creditors herein, which payment, well and truly to be made, we bind ourselves, our heirs, executors, and administrators, jointly and severally, by these presents. Signed and sealed this 7th day of October, A. D. 1918.

"The condition of this obligation is such that whereas, a petition for the appointment of a receiver of the Walker Grain Company has been filed in the United States District Court for the Northern District of Texas, by the petitioning creditors herein, and the said matter having been referred to Hon. W. B. Paddock, referee, he, the said referee, on the 7th day of October, 1918, made and entered his order nominating and appointing W. W. Wilkinson, Esq., as receiver of the estate of the said Walker Grain Company; and whereas, the said Walker Grain Company has applied for a stay of the proceedings in said matter until the matter can be finally passed upon by the honorable District Court of the United States for the Northern District of Texas; and whereas, said stay has been granted by Hon. W. B. Paddock, upon the filing and approval of this bond:

"Now, therefore, if the said Walker Grain Company shall turn over and deliver, when ordered to do so, by the District Court of the United States for the Northern District of Texas, to the said W. W. Wilkinson, receiver, all the property, funds, and effects of which it is possessed, and which may come into its possession at any time pending the hearing in the United States District Court, then the above obligation to be void; otherwise, to remain in full force and virtue.

"Walker Grain Company, by J. L. Walker, Pres., Principal.
"J. L. Walker, Surety.
"T. L. James, Surety."

The District Court affirmed the order of the referee appointing the receiver, and ordered the receiver to take charge and control of all of the property and assets of the Walker Grain Company, and likewise ordered the company to turn over and deliver all of the assets and properties of the said company to the said receiver. At that time there was in the possession of the company property, funds, and effects of the value of $37,027.31. The company ignored said order, and parted with the possession of the said property, and refused to turn the same over to the receiver or to the trustee; the company having, in due time, been adjudged a bankrupt.

Before such adjudication, however, and after the affirmance by the District Court, the bankrupt filed a petition to superintend and revise the order of the District Court by the Circuit Court of Appeals (260 Fed. 1022, 171 C. C. A. 669), and also applied to that court for a stay of the receivership proceedings pending the determination of such petition. The Circuit Court of Appeals granted the stay upon the giving of a bond in the sum of $40,000 by the Walker Grain Company. Such bond was executed and is as follows:

"State of Texas, County of Tarrant.

"Whereas, in the matter of Gregg Grain Company and others, in bankruptcy, versus Walker Grain Company, the said Walker Grain Company has filed its petition in the United States Circuit Court of Appeals to review and revise the order of the District Court of the Northern District of Texas, sustaining and affirming the order of the referee appointing a receiver of the property and assets of the said Walker Grain Company; and whereas, Hon. R. L. Batts, judge of said Circuit Court of Appeals, has granted an order suspending and superseding said order of the United States District Court, affirming the order of the referee appointing said receiver. until a decision can be had upon said petition to revise said order of said District Court, to take effect upon the execution and approval of this bond by the clerk of the District Court for the Northern District of Texas, or his deputy:

"Now, therefore, we, the said Walker Grain Company, as principal, and the undersigned sureties, as sureties, holding themselves jointly and severally bound unto the petitioning creditors in said cause in the penal sum of forty thousand dollars, conditioned that, in the event said petition to review said order of said District Court be denied, said Walker Grain Company will deliver unto said receiver or his successors or a trustee in bankruptcy, should the said Walker Grain Company be adjudicated a bankrupt, all the property and assets which may be found upon final judgment to be the property and assets of the said Walker Grain Company. In the event said order appointing said receiver be vacated, this bond shall thereupon be of no effect.

"Witness our hands this —— day of Dec., 1918. Walker Grain Co., Principal, by J. L. Walker, Prest. Massachusetts Bonding & Insurance Co., by Geo. Beggs, Jr., Agent. J. L. Walker, Surety.

"Approved February 14, 1920."

The Circuit Court of Appeals affirmed the action of the District Court. Thereafter, on the 22d day of November, 1919, the Walker Grain Company was adjudicated a bankrupt as of the 16th day of August, 1918, the date of the filing of the petition against it, and the receiver was made the trustee, and he is the plaintiff in these two suits.

The sum of $37,027.21 represents money and property that came into and was in the possession of the bankrupt as its own property at the time of the execution of this bond, and it is claimed that the bankrupt

has wholly dissipated said sum of money and said property, and is unable to restore same or any part thereof, and has refused to restore same or any part thereof to the trustee, and that under the terms of the bond the defendants are liable for said breach.

The plaintiff has a second count in cause No. 985, wherein he declares upon the bond as a common-law right; there is no such second count in No. 986. In neither one of the petitions is there any allegation that the suit is one arising under the laws of the United States.

There is no apparent reason for the filing of two suits, since it appears that the same property was converted and kept from the rightful possession of the trustee; but these matters may be remedied by a consolidation of the actions and an amendment of the pleadings, if the plaintiff's counsel sees fit. There is no such diversity of citizenship as would give this court jurisdiction.

The defendants maintain that the bonds declared upon are mere voluntary obligations, neither authorized, required, nor provided for by any law or statute of the United States, and that therefore the suits are not suits arising under that provision of section 24 of the Judicial Code (Comp. St. § 991), which gives this court jurisdiction of suits arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority.

The question presented is not without its difficulty. This difficulty is increased by the apparent, but not real, similarity of the case under consideration with Lovell v. Newman, 227 U. S. 412, 33 Sup. Ct. 375, 57 L. Ed. 577. In that case Lovell, the trustee, brought suit to recover on a bond which had been given, not by the bankrupt, but by a third party, for the possession of certain cotton which the third party claimed. The third party challenged from the beginning the ownership and right of the trustee. In fact, the trustee was compelled to seek summary writs from the court for the taking of the property in question into his possession. The claimant executed bond for the property, which it claimed belonged to it. It was contended in that case, for the right of hearing by the Supreme Court, that it arose out of the laws of the United States. The petition disclosed that the cotton was not in the possession of the bankrupt, and that the claimant, who executed the bond that was sued upon, asserted legal title to it. The court maintained that the action by the trustee in Louisiana, for the cotton, and on the bond, was ancillary to the original proceeding in the bankruptcy court in Alabama, where the adjudication was had.

There seems to have been no doubt whatever about the correctness of such jurisdiction. The court held that it was not a suit arising under a law of the United States; that it did not really and substantially involve a dispute or controversy respecting the validity, construction, or effect of a law of the United States upon which the plaintiff's right to recover depended; that such a cause of action would not be asserted simply because the action was brought by an assignee in bankruptcy or by bankruptcy officer.

After reciting the allegations of the plaintiff's bill, the court said:

"It therefore appears that the action, as outlined in the petition, made the plaintiff's right to recover depend upon the ownership of the property by the bankrupt as its own before the bankruptcy proceeding. The investigation of

this question involved only matters of general law, and did not depend upon any right conferred by the bankruptcy act upon the trustee."

The court further said:

"The bond here was not required by any law of the United States. It was permitted to be given that the property might be removed upon the steamer upon which it was about to be carried abroad. Under the allegations of his complaint the trustee could recover, if he could show that the bankrupt owned this property before the bankruptcy proceedings."

The Supreme Court dismissed the writ of error holding that the judgment of the Circuit Court of Appeals was final; the jurisdiction of the trial court depending upon a diversity of citizenship.

The plaintiff presents the case of American Surety Co. v. Schultz, 237 U. S. 159, 35 Sup. Ct. 525, 59 L. Ed. 892, and claims that it rules the case at bar. That case was a suit on a supersedeas bond given under the provisions of sections 1000 and 1007 of the Revised Statutes of the United States (Comp. St. §§ 1661, 1666), and, so far as the controversy is concerned, is quite different from what we are here considering. It even mentions the Lovell Case in these words:

"This conclusion would be correct if the suit is to be treated as an ordinary action on a sealed instrument voluntarily given."

That is, that the bond was not given by virtue of any law of the United States. The last paragraph of the opinion, however, is helpful:

"The judgment and the bond were wholly distinct, and arose out of different laws—one out of the common law; the other out of a law of the United States. When the amount of Whitcomb's liability for breach of contract had been adjudged by the federal court, the plaintiff was entitled, at once, to enforce payment by levy and sale. The laws of the United States, however, intervened and gave to the defendant a means of preventing immediate collection and possibly of defeating the judgment. This delay, which was helpful to the defendant, was granted by a federal statute on condition that he would file a bond with surety conditioned to pay the plaintiff in the event the defendant failed to make good his appeal. If that appeal was not made good, the plaintiff's right of action likewise arose out of a federal statute. A court of the United States had jurisdiction to determine whether there had been a breach of the condition and, if so, the extent of plaintiff's rights and of the defendant's liability under such law."

In Leslie v. Brown, 90 Fed. 171, 32 C. C. A. 556, the Circuit Court of Appeals for the Sixth Circuit, speaking through Mr. Justice Taft maintained ancillary proceeding on an injunction bond, before any statute of the United States required such bond. In Lamb v. Ewing, 54 Fed. 269, 4 C. C. A. 320, a bond to stay execution out of a judgment was breached, and an ancillary proceeding for forfeiture of the same was allowed to be maintained in the federal court on the ground that it was auxiliary to the first suit.

Of course there are many other cases both for and against the retention of this jurisdiction, but such cases are merely persuasive; they are hardly on the boundary line, and are not thought to be controlling. Howard v. U. S., 184 U. S. 676, 22 Sup. Ct. 543, 46 L. Ed. 754; White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67; Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815. In the latter case it was said:

"When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate, the possession of the receiver is the possession of the court, and the court itself holds and administers the estate, through the receiver as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it."

See Price v. Abbott (C. C.) 17 Fed. 506; Armstrong v. Trautman (C. C.) 36 Fed. 275; Toledo Fence & Post Co. v. Lyons (C. C. A.) 290 Fed. 637.

[1] Let us ourselves reason toward a conclusion that seems to be for the right and makes effective all of the provisions that surround both the statute fixing the jurisdiction of this court and the statute putting into effect the constitutional provision with reference to the bankruptcy act. Subdivision 3 of section 2 of the Bankruptcy Act (Comp. St. § 9586) vests authority in the bankruptcy court to "appoint receivers * * * for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified." Subdivision 15 of section 2 provides that such courts shall "make such orders, * * * and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act."

The necessity of providing for the appointment of a receiver is obvious. A considerable time must necessarily elapse between the filing of a petition and the adjudication of bankruptcy and selection and qualification of a trustee. During this period opportunity may be afforded for the dissipation or depreciation of the assets either by the alleged bankrupt, or by third persons, with or without his connivance. In re Benedict (D. C.) 140 Fed. 55; Collier (13th Ed.) 67. Subdivision (e) of section 3 (Comp. St. § 9587) provides for the giving of a bond by the receiver.

[2] The order appointing a receiver of the bankrupt's entire estate, and directing the delivery of such estate to him as far as possible by the bankrupt, and enjoining all other persons from transferring or otherwise interfering with the property, effects a sequestration of the bankrupt's estate. Ross v. Stroh, 165 Fed. 628, 91 C. C. A. 616. The property of the bankrupt is in custodia legis. It is not only in the custody of the law, but public policy demands, and the purpose of the law demands, that it shall be kept and administered for the purpose that the law allowed it to be taken, namely, for the payment of the bankrupt's debts—the satisfaction of the claims of creditors.

Subdivision (a) of section 38 (Comp. St. § 9622) of the act gives the referee the authority to do the things therein enumerated, "subject always to a review by the judge." Having ordered the appointment of a receiver, before adjudication, "he shall proceed, at once, to take from the bankrupt all of his property."

It will be noted that subdivision 3 of section 2 authorizes the court to appoint receivers, "or the marshals," for the preservation of estates, to take charge of the property of the bankrupt after the filing of the petition and until it is dismissed or the trustee is qualified. Section 69 (Comp. St. § 9653) provides:

"A judge may, upon satisfactory proof, by affidavit, that a bankrupt against whom an involuntary petition has been filed and is pending has com-

mitted an act of bankruptcy, or has neglected or is neglecting, or is about to so neglect his property that it has thereby deteriorated or is thereby deteriorating or is about thereby to deteriorate in value, issue a warrant to the marshal to seize and hold it subject to further orders. Before such warrant is issued the petitioners applying therefor shall enter into a bond in such an amount as the judge shall fix, with such sureties as he shall approve, conditioned to indemnify such bankrupt for such damages as he shall sustain in the event such seizure shall prove to have been wrongfully obtained. Such property shall be released, if such bankrupt shall give bond in a sum which shall be fixed by the judge, with such sureties, as he shall approve, conditioned to turn over such property, or pay the value thereof in money to the trustee, in the event he is adjudged a bankrupt pursuant to such petition."

The provision is equivalent to the reclaimer of a defendant in replevin, and under it the judge has a like discretion as to the amount of the bond and the sureties. Search as we may, there seems to be no specific provision whatever for the receiver to deliver over the possession of the property taken by him during the review sought by the bankrupt of the order of the referee appointing such receiver, and no provision for the giving of a bond by the bankrupt for the forthcoming of the property in the event the order of the district court be against him; but from section 69 it appears that if the court appoints a marshal to take the property of one against whom an involuntary petition has been filed, for the same preservation purposes, and who shall give a protecting bond, the alleged bankrupt may have the property released to him from the marshal by giving a forthcoming bond in an amount and assured in accordance with the judge's order.

The preamble to the General Bankruptcy Orders, formulated by the Supreme Court of the United States (18 Sup. Ct. iv), reads as follows:

"In pursuance of the powers conferred by the Constitution and laws upon the Supreme Court of the United States, and particularly by the act of Congress approved July 1, 1898, entitled 'An act to establish a uniform system of bankruptcy throughout the United States, it is ordered, on this 28th day of November, 1898, that the following rules be adopted and established as general orders in bankruptcy, to take effect on the first Monday, being the 2d day, of January, 1899. And it is further ordered that all proceedings in bankruptcy had before that day, in accordance with the act last aforesaid, and being in substantial conformity either with the provisions of these general orders or else with the general orders established by this court under the Bankruptcy Act of 1867, and with any general rules or special orders of the courts in bankruptcy, stand good, subject, however, to such further regulation by rule or order of those courts as may be necessary or proper to carry into force and effect the Bankruptcy Act of 1898 and the general orders of this court."

General Order No. 27 (89 Fed. xi, 32 C. C. A. xi) provides:

"When a bankrupt, creditor, trustee, or other person shall desire a review by the judge of any order made by the referee. he shall file with the referee his petition therefor, setting out the error complained of; and the referee shall forthwith certify to the judge the question presented. a summary of the evidence relating thereto, and the finding and order of the referee thereon."

Rule 38 of the Circuit Court of Appeals of the Fifth Circuit (235 Fed. xii, 148 C. C. A. xii) authorizes the granting of a stay in orders made by the District Court upon revision by that court; such rule reading as follows:

292 F.—26

"Petitions to superintend and revise under clause (b), section 24, Bankruptcy Law, shall be filed within 30 days from the date of the proceeding sought to be revised, but shall not operate as a supersedeas unless upon order of the judge who passed the order in question, or one of the judges of this court."

Division (b) of section 24 (Comp. St. § 9608), to which the above rule alludes, relates to proceedings in bankruptcy only, as distinguished from controversies arising in bankruptcy and from plenary suits. U. S. v. Ruggles, 221 Fed. 256, 37 C. C. A. 109; 1 Collier (13th Ed.) p. 812. Broadly speaking, it covers questions between the alleged bankrupt and his creditors as such, commencing with the filing of the petition, ending with the discharge and including matters of administration generally, such as appointments of receivers and trustees, sales, exemptions, proof and allowance of claims, and other similar matters to be disposed of summarily, all of which naturally occur in the settlement of the estate. Henkin v. Fousek (C. C. A.) 267 Fed. 557; Matter of Prudential Co. (C. C. A.) 270 Fed. 469.

[3] General orders of the Supreme Court and the rules of the District Courts in accordance therewith are as obligatory on officers of the court as the Bankruptcy Act itself. They have the same force as a provision of the statute. They are made under an express delegation of power, both constitutional and statutory. In re Cobb (D. C.) 112 Fed. 655; In re Hoyt & Mitchell (D. C.) 127 Fed. 968; Matter of Ingalls, 137 Fed. 517, 70 C. C. A. 101; Matter of Daugherty (D. C.) 189 Fed. 239; Orcutt v. Green, 204 U. S. 96, 27 Sup. Ct. 195, 51 L. Ed. 390; West v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098; In re Gerber, 186 Fed. 693, 108 C. C. A. 511.

We are unable to discover just why the Congress gave the right of replevin when the marshal seizes, and did not, specifically, give the right of replevin when the receiver seizes, or to prevent such seizure; again, why a seizure by the marshal was only authorized by the judge, when a seizure by a receiver may be ordered by the referee.

"A similar practice was authorized by the law of 1867; it included the arrest and detention of the debtor, but did not authorize the court to release the property to him on filing a new bond."

While there appears to be no direct statutory authorization for the referee to stay the hand of the receiver while the alleged bankrupt is reviewing his order of appointment, yet it is inconceivable that the right of review and the right of stay should be given, without any correlative right to exact indemnity from the bankrupt during such period.

[4] The United States court, by reason of the Constitution of the United States and the statutes passed thereunder, had taken over the administration of this estate; therefore it had the jurisdiction of the subject-matter. The property of the Walker Grain Company was in the hands of the bankruptcy court. The court liberated the property to the bankrupt upon its giving an indemnifying or forthcoming bond. These actions, these orders, these proceedings, arose out of and by virtue of and under the laws of the United States, and hence this court has jurisdiction to try out and determine whether a bond given out of this proceeding shall be liquidated, and, if so, in what amount and

to what extent. The bond was executed and given under a "general rule" and a "special order" of a court in bankruptcy.

It seems to me that I can clearly distinguish this case from the case of Lovell v. Newman, cited above. In that case the most troublesome paragraph advises that the contest between the claimant and the trustee in bankruptcy is a mere question of law, for the assertion of the ownership of the cotton involved; that such contest does not arise out of any law of the United States. The instant case arises directly out of those statutes of the United States which provide the methods for the conservation and distribution of the bankrupt's property. The retention of jurisdiction is not an expansion of the limited jurisdiction which belongs to the federal court, and which the judge is eager to recognize. Often, when the court maintains its jurisdiction over a close matter, the criticism is made that the federal court is trying to reach out and gather more and more territory unto itself, when the true feeling is quite the contrary. The court wishes to adjudicate the matters that are properly within its jurisdiction, and no matter which is outside thereof.

The motions to dismiss are overruled.