CHARLES H. SMITH

*v.*

JACOB WIGLER et al.

[Decided February 16th, 1907.]

1. A surety is not required to surrender any security given him against loss until his liability to pay is ended.

2. The burden is on a surety, in a suit to compel him to reassign a mortgage assigned to him as indemnity, to show that the mortgage was intended to secure him as surety, not only on a bail bond then executed, but on others that it might be necessary to give in the proceedings.

3. Evidence in a suit against a surety to compel him to reassign a mortgage assigned to him as indemnity considered and *held* that complainant was entitled to a decree directing a reassignment.

Heard on bill, answers, replication and proofs.

*Mr. Frank E. Bradner,* for the complainant.

*Mr. Louis Hood,* for the defendant Wigler.

EMERY, V. C.

Complainant, who owned a bond and mortgage for $800, given by the defendant Ward, on lands in Essex county, assigned the bond and mortgage to the defendant Wigler. The assignment, dated August 18th, 1903, was in writing, and on its face was an absolute assignment, but it is admitted that the assignment was not absolute, but was intended to secure defendant Wigler against loss, by reason of his becoming bail on a recognizance in a criminal proceeding against one Edmund J. Smith, complainant's brother.

The complainant's brother had been arrested on a warrant issued July 31st, 1903, by United States Commissioner Jones, on a complaint for violation of the National Banking laws, and on August 18th was in the custody of the United States marshal before the commissioner. On that day defendant Wigler and one Hargraves gave bail in the sum of $2,500 for the appearance of the prisoner before the commissioner on August 27th, 1903.

The defendant Wigler became bail at the request of the complainant and his brother, Albridge C. Smith, and to secure him against loss to the extent of $1,250 (one-half of the bail bond) it was agreed that he should be secured by the mortgage in question for $800, to be assigned by complainant, and by a note for $450, to be given by Albridge C. Smith. The mortgage was assigned, and, together with the note for $450, delivered to Wigler just before or at the time of his becoming bail on the 18th.

Complainant swears that according to his recollection there was a paper written at the time declaring the purpose of the assignment, but none has been produced, and no other witness corroborates him on this point. The note for $450, written by Albridge C. Smith, who was himself an experienced lawyer, did express its purpose, as follows:

"NEWARK, N. J., August 18th, 1903.

"In consideration of Jacob Wigler becoming surety for the appearance of Edmund J. Smith to answer a charge made against him on behalf of the Merchants National Bank of Newark, N. J., before S. Howell Jones, U. S. commissioner, I hereby agree to pay to him any loss he may suffer or incur by reason of being such surety, to the amount of $450, if the said Edmund J. Smith shall neglect or refuse to appear in compliance with his recognizance. (Signed) ALBRIDGE C. SMITH."

The accused did appear before the commissioner on August 27th, 1903, and, after a hearing on that day, was directed to be held in custody until bail in the sum of $5,000 for his appearance at the next term of the United States district court to answer any indictment by the grand jury. He entered into recognizance in this increased sum of $5,000, with the same sureties and was released. This recognizance was forfeited and judgment on it for $5,000 against Wigler has been entered, upon which execution has been delivered, but no payment on account of it seems to have been made.

The disputed question in the case is one purely of fact and is, whether the mortgage was assigned solely to secure Wigler on the recognizance of $2,500 for the prisoner's appearance before the commissioner for the examination on August 27th, or whether it was to secure him as well on any recognizance to be subsequently entered into for Edmund J. Smith's appearance to answer to any indictment found by the grand jury. If it was for appearance before the commissioner only, then Wigler's liability on the recognizance for that purpose is discharged and complainant is entitled to a return of the mortgage. If, however, the assignment was to secure defendant for the second recognizance as well, then, inasmuch as his liability under that recognizance has been fixed, and has not been wholly discharged, complainant is not entitled to the return of the security given to protect him. While it is true, as complainant insists, that under our decisions—*Jeffers* v. *Johnson, 21 N. J. Law (1 Zab.)* 73 (*Supreme Court, 1847*) ; *Miller* v. *Fries, 66 N. J. Law (37 Vr.) 377 (Supreme Court, 1901)*—it has been held that on a bond "to save and keep harmless," a surety cannot recover before payment, that principle does not require the surrender of any security the surety may have against loss *if he does pay,* until

his liability to pay is ended. If held, as Wigler claims, it may be that the government itself, if necessary, can reach this security in Wigler's hands for the purpose of satisfying the execution.

Neither complainant nor his brother, Albridge C. Smith, attended the hearing before the commissioner on the 27th, nor did either of them after the 18th, and before the second recognizance was given, have any communication with Wigler. Only one arrangement was made between the Smith brothers and Wigler to secure him for giving bail, and this was made at the commissioner's office on August 18th, and the disputed question is the extent to which they both then agreed to secure him. For it appears by the evidence of all the witnesses called to the conversation that Wigler was to be secured to the extent of $1,250 by the brothers of Smith—$800 by mortgage to be assigned by complainant, and $450 by the note of the other brother. He was, by the agreement, to have security for $1,250, and no difference was made or suggested as to the terms of security between the mortgage and the note, which together made up the whole security. The note, the only written evidence of any of the terms, limits the security to the appearance before the commissioner, and so far as Albridge C. Smith is concerned, its terms are final and conclusive and no others can be added. Defendant and a witness named Simon swear that both brothers agreed that the security should stand until the case was disposed of at Trenton, and that Wigler was to renew the recognizance for this purpose on the 27th if the prisoner was held. Both of the Smith brothers deny any such agreement, and say that the security was only for appearance before the commissioner. Their statement is corroborated by the terms of the note written by Smith, and delivered on that day to Wigler. Defendant charges that the note did not express the true agreement, and that the agreement actually made was fraudulently omitted by A. C. Smith, who drew it for himself, and was a deception on Wigler, who could not read. The evidence offered to support this charge of fraud is that of Garside, the United States marshal, who says that Albridge C. Smith told him immediately after the agreement was made that he had agreed with Wigler to continue the bail for the grand jury, and that he would not be there on the 27th. Albridge C.

Smith denies this positively. The whole question as to the extent to which the mortgage was assigned for security depends on the comparative credibility of the witnesses, affected as it is by the important fact that the extent of the security of the note (admittedly the same as the mortgage) was then fixed in writing.

Under the circumstances of this case the burden is on the defendant, I think, to satisfy the court that security was intended beyond the recognizance then actually entered into, and to show that the note did not express the true agreement between the parties. Upon the whole evidence, I think he has failed to establish this, and I conclude that the note did truly express the substantial agreement upon which both the assignment of mortgage and note were given. Wigler's general credibility on any point affecting his liability in the case is very seriously affected by his statement, that the commissioner on taking bail on the 27th of August told him it was for the same amount, $2,500, and did not say it was for $5,000. The commissioner denies this, and I believe him. Simon's evidence, too, must be considered in the light of the fact that, as it now appears, he was the person who in fact called up Wigler to come to the commissioner's after the hearing on the 27th of August, and told him to go on the new bond. Simon was also instrumental in getting Wigler to go on the first recognizance, for which Wigler was paid $25 by the prisoner. And inasmuch as the whole matter of renewing the bail on the 27th seems to have been undertaken by the prisoner, Simon and Wigler, in the absence of the prisoner's brothers, and without sending for them, I am inclined to think that these three persons took it for granted that the security would continue if they renewed the bail, either in the same or in an increased amount, and that this view has probably colored the evidence of Wigler and Simon as to the original agreement. But whether this view is correct or not, I am clear that the evidence offered on behalf of defendant has not overcome the evidence of the Smiths, supported as it is by the terms of security written out in the note at the time. The explanation of the brothers of the reason for giving security only for a short time is reasonable, and the claim that the true

terms of the agreement were fraudulently suppressed from the note is without foundation.

Complainant is entitled to a decree directing the reassignment and delivery of the mortgage and also to an account of the interest received thereon by Wigler.