## SNOW v. DUXSTAD.

(No. 766;  Decided March 24th, 1915;  147 Pac. 174.)

Appeal and Error—Alimony Pendente Lite—Permanent Alimony—Bond to Dissolve Injunction—Consideration — Effect of Dismissal of Action—Effect of Reversal on Appeal—Divorce—Release of Indemnity by Surety—Principal and Surety—Construction of Contract—Words and Phrases — "Premises" Defined.

1. The acceptance of a bond to dissolve or avoid the granting of an injunction is within the ordinary powers of a court of chancery, when proceeding according to the general principles of equity, and statutory authority for such acceptance is unnecessary.

2. A bond executed by a defendant in a divorce action to
secure the dissolution of a temporary order restraining
him from the disposal of his property and to prevent a
continuance of the restraint was made and executed upon
a valid and sufficient consideration and may be resorted
to for the enforcement of orders mentioned in it to the
extent of the amount of the penalty.

3. A judgment dismissing a divorce action in which the de-
fendant had given a bond to procure the dissolution of
a temporary restraining order against disposal of his
property and to secure the payment of alimony and attor-
ney's fees pending suit, will not release a surety on the
bond from liability, as the conditions of the bond are
operative pending appeal and until the final determination
of the suit.

4. Where the surety on a bond given to dissolve a temporary
restraining order and to secure the payment of alimony,
etc., who had been indemnified by a deposit of money by
his principal, surrendered the deposit on a dismissal of
the suit in the trial court, such surrender did not release
his liability on the bond on a reversal of the judgment of
dismissal, when such surrender of the indemnity fund
was without the consent of the obligee.

5. A judgment dismissing a divorce action in which defend-
ant had given a bond to procure the dissolution. of a tem-
porary restraining order against a disposal of his prop-
erty and to secure the payment of alimony pending suit,
which judgment was afterwards reversed and further
proceedings had in the lower court, did not deprive the
surety on such bond of the remedy given by Section 5030
Compiled Statutes 1910, to obtain, by action against the
principal, indemnity for his liability, as the surety's right
to obtain indemnity, or retain that already received, did
not depend on the fact that such a judgment had been
rendered, but upon whether, under the conditions of the
bond, the liability of the surety had terminated.

6. A bond given by a defendant in a divorce action to procure
the dissolution of a temporary restraining order against
a disposal of his property conditioned "that if the said
(defendant) shall obey the order of this court made in
the above entitled cause requiring the payment of alimony
and attorney's fees *pendente lite,* as provided by the order
of this court and shall obey such further orders, as may
be made in the premises" did not cover a subsequent
order allowing permanent alimony, as the words "such

further orders, as may be made in the premises" restricted the obligation to a compliance with orders relating to alimony and attorney's fees *pendente lite.*

7. The word "premises" in a written instrument denotes previous matter contained therein concerning which something is proposed.

8. While the contract of a surety is to be construed, as all other contracts, in accordance with the intention of the parties, as disclosed by the language of the instrument read in the light of circumstances, nevertheless the surety being a favorite of law is entitled to stand upon the strict letter of his agreement; its terms having been once ascertained.

9. A bond given in a divorce action conditioned upon a compliance with orders made therein for the payment of alimony and attorney's fees *pendente lite,* is binding, as to such orders made by the trial court, by the appellate court pending appeal, and by the trial court after a reversal and re-trial of the case, such action being still pending in the lower court after appeal and until a final determination thereof.

ERROR to District Court, Laramie County, WILLIAM C. MENTZER, Judge.

The material facts are stated in the opinion.

*Burke & Riner,* for plaintiff in error.

The bond was without consideration and is void. The surety was released by the judgment dismissing the divorce suit. Contracts of suretyship are strictly construed. A proceeding in error is a new suit and the bond here in controversy cannot be extended to the consequences of a new suit. The injunctional order would have fallen with the dismissal of the suit, and the bond which was given in lieu of the restraining order also fell at that time. The judgment of dismissal was not stayed. The laws of the state applicable to the proposition that the bond is void are Sections 3929, 4897, 4903, 4904 and 4906, Compiled Statutes 1910. A temporary restraining order requires a bond. (Herenstein v. Herrman, 6 N. P. (Ohio) 98; In Re George, 5 C. C. (Ohio) 207; Diehl v. Friester, 37 Oh. St.

473; Baker v. Meisch, 29 Neb. 233, 45 N. W. 685-7; State
v. Rush County, 35 Kan. 150, 10 Pac. 535; State v.
Kearney County, 42 Kan. 739, 22 Pac. 735; Van Fleet v.
Stout, 44 Kan. 523, 24 Pac. 960; In Re Pavey, 36 Pac.
(Kan.) 878, 52 Kan. 675; Murphy v. Montandon, 3 Ida.
325, 29 Pac. 851; Bruce v. Conyers, 54 Ga. 678; Shevlin
v. Whelen, 41 Wis. 88; Homan v. Brinkerhoff, 1 Den.
(N. Y.) 184; Vose v. Cockcroft, 44 N. Y. 415, at 420-
421; Ford v. Fuget, 29 Ind. 52; State v. Bartlett, 30 Miss.
52.) Snow, the surety, was released by judgment dismiss-
ing the suit. (32 Cyc. 73; Miller v. Stewart, 9 Wheat.
680; Smith et al. v. United States, 2 Wall. 219; Reese v.
United States, 9 Wall. 13; United States v. Freel, 186 Un-
ited States 309; Guaranty Co. v. Pressed Brick Co., 191 .
U. S. 416.) The words "in the premises" used in the bond
relate to orders of the class above mentioned. (Alaska
Co. v. Hirsch, 47 Pac. (Cal.) 124, Id. 51 Pac. 340 (Calif.) ;
Tutonia Fire Ins. Co. v. Mund, 102 Pac. 89.) A proceed-
ing in error is a new suit. (Robinson v. Orr, 16 Oh. St.
287; Smith v. Fisher, 32 Week. Law Bul. (Ohio) 394;
McAlpin v. Clark, 1 N. P. (Ohio) 195; Thompson v. Gest
&c. Assn., 13 Oh. Cir. Ct. 250; Heberger v. Sabbert, 48
Week. Law. Bul. 12; Charles v. Fawley, 71 Ohio St. 50,
72 N. E. 294; Levering v. National Bank of Morrow
County, 100 N. E. 322; Clark v. Sheeley, 69 Nebr. 717,
96 N. W. 593.) A petition in error starts a new action.
(2 Cyc. 510; Section 5130, Comp. Stats. 1910; Sec. 6731
of Whittaker's Annotated Ohio Civil Code; City of Rock-
ford v. Compton, 115 Ill. App. 406, 2 Ency. of Pl. & Pr.
324.) The dismissal would have terminated the restrain-
ing order, and the bond being given in lieu of such order
also fell. (Harrabin v. Iowa City et al., 142 N. W. (Ia.)
212; Coleman v. Hudson &c. Co., Fed. Cases No. 2983;
Hoyt v. Carter, 7 How. Pr. (N. Y.) 140; Yale v. Baum,
70 Miss. 225, 11 So. 879; Lyons v. Green, 68 Ark. 205, 56
S. W. 1075; Day v. Bailey, 41 So. 448, 117 La. Ann. 154;
Lewis v. Jones, 67 S. C. 157, 43 S. E. 525, 22 Cyc. 951;
Merrimack &c. Bank v. City of Clay Center, 219 U. S. 527;

Smith v. Whitfield, 20 So. 1012, 38 Fla. 211; Brevort v.
City of Detroit, 24 Mich. 322; State v. Harness, 26 S. E.
270, 42 W. Va. 414; Knox v. Harshman, 132 U. S. 141,
33 L. Ed. 249; Butchers &c. Assn. v. Crescent &c. Co., 10
Wall. 273, 19 L. Ed. 915; Moore v. Moore, 59 Tex. 54;
Williams v. Pouns, 48 Tex. 144; High on Injunctions,
Secs. 1702-1711; Old Hickory &c. Co. v. Bleyer, 74 Ga.
201.) The judgment of dismissal was not stayed. (Sec-
tions 5116 and 5124, Compiled Statutes 1910.) A subsist-
ing judgment, though afterwards reversed, justified all acts
done by the plaintiff in enforcing it. (Freeman on Judg-
ments, 4th Ed., Vol. 2, Sec. 482; Black on Judgments, 2nd
Ed., Vol. 2, Sec. 513; Chicago &c. Co. v. Garrett, 87 N.
E. 1009, 239 Ill. 297; Stout v. Guely, 13 Colo. 604; Mack-
lin v. Allenberg, 100 Mo. 337; Pierce v. Stinde, 11 Mo.
App. 364; Woodridge v. Boyd, 13 Lea (Tenn.) 151;
Dunfee v. Childs, 59 W. Va. 227; McCormick v. McClure,
6 Blackf. (Ind.) 466; Miller v. Dixon, 42 Pac. (Kans.)
1014; Thompson v. Thompson, 69 S. W. (Ky.) 714;
Langley v. Warner, 3 N. Y. 327; Fidelty Trust &c. Co. v.
Louisville &c. Co., 58 S. W. (Ky.) 712; Husband's Re-
ceiver v. Fidelity Trust &c. Co., 139 S. W. (Ky.) 812;
Porter v. Small, 120 Pac. (Ore.) 393; Freeman on Judg-
ments, 4th Ed., Vol. 2, Sec. 482; Hamilton v. Bell, 123
Cal. 93, 55 Pac. 758; Bank of the United States v. Bank
of Washington, 6 Pet. 8; Sections 5116 and 5124 Compiled
Statutes 1910; Henderson v. James, 39 N. E. (Ohio) 805;
Laughlin v. King, 133 Pac. 1073.) This case is analogous
in principle to a case of a bail bond given in the lower
court decided in favor of the principal. The obligation of
the bond is exonerated, although the decision from the
lower court is afterwards reversed. (Duncan v. Tindall,
20 Oh. St. 567; State v. Glenn, 40 Ark. 332; State v.
Murphy, 10 Gill. & J. (Md.) 365; People v. Hathaway, 68
N. E. 1053; Butler v. Bissell, 1 Root (Conn.) 102; Whip-
ple v. People, 40 Ill. App. 301; Baker &c. Co. v. Fisher,
35 Kan. 659, 12 Pac. 20; Section 5030, Comp. Stats. 1910;
People v. Manning, 8 Cow. (N. Y.) 297; Taylor v. Tain-

tor, 16 Wall. 366; Hilliard v. Mutual &c. Co., 35 N. J. L. 415.)

*M. A. Kline,* for defendant in error.

A restraining order differs from an injunction. (Sec. 4901, Compiled Statutes 1910; San Diego Water Co. v. Steamship Co., 35 Pac. 652; *Ex Parte* Grimes, 94 Pac. 669; Creech v. Long, 51 S. E. 616; State v. Wakely, 44 N. W. 488; Wetzstein v. Boston &c. Mining Co., 63 Pac. 1043.) The above authorities are also to the effect that a restraining order is valid without a bond. An examination of the Nebraska, Ohio and Kansas cases cited by the opposition will show that a mere failure to execute a bond will not render an order of injunction void. There is a distinction between an erroneous order and a void order. (White v. Nuckolls, (Colo.) 112 Pac. 331; Miles v. State (Neb.) 105 N. W. 301; Cline v. Whittaker (Wis.) 129 N. W. 400; Hattlestead v. County (Iowa) 114 N. W. 629; State v. Baldwin (Iowa) 10 N. E. 647; 1 Joyce on Injunctions, Sec. 247; Lewis v. Rowland, (Ind.) 29 N. E. 922.) The consideration for the execution of a bond was sufficient. (Whitney v. Clary, (Mass.) 13 N. E. 393; Union Bank v. Geary (U. S.) 8 Law. Ed. 60; Judy v. Louderman (Ohio) 29 N. E. 183; Fresno Packing Co. v. Hannon (Cal.) 116 Pac. 687; Sheldon et al. v. Biglow' et al., 100 N. W. 502; Sewer Pipe Co. v. Donnelly, 113 N. W. 1.) A surety is estopped to deny the recitals in his bond. (U. S. F. & G. Co. v. Woodson Co., 145 Fed. 144; State v. Smith, 87 (Miss.) 551, 40 So. 22; Spreyne v. Garfield Lodge, 117 Ill. App. 253; U. S. F. & G. Co. v. McLaughlin (Neb.) 109 N. W. 390; American Bonding Co. v. Ottumwa, 137 Fed. 572; Willis v. Rivers, 80 Ga. 536; May v. May, 19 Fla. 373; Aetna Indemnity Co. v. Waters, (Md.) 73 Atl. 712; Moffitt v. Garrett, (Okla.) 100 Pac. 533; Bailey v. Aetna Indemnity Co., (Cal.) 91 Pac. 417; Easton v. Ormsby (R. I.) 27 Atl. 216; Gutter v. Joiner (Wash.) 105 Pac. 457; Brady v. Onffroy (Wash.) 79 Pac. 1004.) The Wyoming divorce Statute authorizes restraining

orders pending suit for the protection of personal and property rights and no bond is specifically required. It is a general rule existing in most of the states. (Springfield M. & F. Ins. Co. v. Peck, 102 Ill. Rep. 269; Gardner v. Gardner, 87 N. Y. 114; Gray v. Gray, 65 Ga. 193; Stillman v. Stillman, 7 Baxt. (Tenn.) 169; Ricketts v. Ricketts, 4 Gill. (Md.) 107; Fishli v. Fishli, 2 Litt. (Ky.) 338; Frakes v. Brown, 2 Blackf. (Ind.) 295; Questel v. Questel, Wright's Ohio Rep. 492; Vermilyea v. Vermilyea, 14 How. Prac. 470; Quirk v. Quirk, 22 La. Ann. 575; Reiffenstein v. Hopper, 36 U. C. Q. B. 295; Forest v. Forest, 3 Abb. Prac. 163; Caskey v. Caskey, 4 Ky. Law. Rep. 811; Harper v. Rooker, 52 Ill. 370; Gardner v. Donnelly, 24 Pac. 1072.) Contracts of suretyship are construed the same as other contracts. (27 Am. & Eng. Enc. of Law (2nd Ed.) 450; Corey v. Schiesswohl, (Colo.) 114 Pac. 292; Lambert v. Haskell, 90 Cal. 611, 22 Pac. 329; Becoritz v. Sapperstein, (Ind.) 92 N. E. 550.) Courts will adopt that construction placed on a contract by the parties thereto. (32 Cyc. 72.) The proceedings in error did not constitute a new suit. The Ohio cases relied upon by plaintiff in error to the effect that error proceedings constitute a new suit are based upon the Ohio Constitution and are not in point here. The appealed case was the same case and the bond given to secure the vacation of the restraining order was binding, as to all subsequent orders made *pendente lite.* The reversal of a judgment restores the parties to an action to the same condition in which they stood before it was rendered. (Duxstad v. Duxstad, 100 Pac. 114 (Wyo.); Simmons v. Price, 18 Ala. 405; Harrison v. Trader, 29 Ark. 85; Mohler v. Wilteberger, 74 Ill. 163; Coalfield Coal Co. v. Peck, 105 Ill. 529; Sullivan v. Thomas, 6 Rich. (S. C.) 201; People v. Bowe, 20 Hun 85; Westall v. Altschul, 126 Cal. 164, 58 Pac. 458; Carpy v. Dowdell, 131 Cal. 499, 63 Pac. 780; Pach v. Gilbert, 7 N. Y. Supp. 336; Greene v. Woodland Ave. &c. R. Co., (Ohio) 56 N. E. 642; Freeman on Judgments (3rd Ed.) Sec. 481; Cable v. Ellis, 120 Ill. 136, 11 N. E. 188; Wil-

liams v. Simmons, 22 Ala. 425; U. S. Bank v. Bank of Washington, 6 Pet. 6; Reynolds v. Hosmer, 45 Cal. 616; McTilton v. Love, 13 Ill. 486; Hiller v. Hiller, 35 Ohio St. 645; Hay v. Bennett, 153 Ill. 271, 38 N. E. 645; Stanbraugh v. Cook, 86 Ia. 740, 53 N. W. 131; Ure v. Ure, (Ill.) 79 N. E. 156; Singly v. Warren, 18 Wash. 434; Bryant v. Fairfield, 51 Me. 149; Gott v. Powell, 41 Mo. 416; Wilson v. Caldwell, 1 Cow. (N. Y.) 644; Carpy v. Dowdell, (Cal.) 63 Pac. 780; Galpin v. Page, 18 Wall. 373, 21 Law Ed. 965; Miller v. Doran, et al., 245 Ill. 200, 91 N. E. 1039; Tutty v. Ryan, 13 Wyo. 134, 78 Pac. 657; Archer v. Hart et al., 5 Fla. 234.) The dismissal of a case decides nothing, as to the rights of the parties and is no bar to a subsequent action. There must be a final judgment before a proceeding in error is authorized. (School District v. Western Tube Co., 13 Wyo. 327.) A judgment is the final determination of the rights of the parties to an action. (Section 4606, Compiled Statutes.) The weight of authority is against the proposition that this case is similar to those cases in which a bail bond has been given and in which the release of the principal exonerates the surety. (Baker Mfg. Co. v. Fisher, 35 Kan. 659; State v. Hancock, 24 Atl. 726; Weber v. State, 37 Atl. 133; Wells v. State, 2 S. W. 806; Sowle Mfg. Co. v. Bernard, 39 S. W. 239; Watt v. Reilly (N. Y.) 62 How. Prac. 350; Von Gerhard v. Lighte, 13 Abb. Prac. 101; Jenkins v. State, 45 Tex. Crim. Rep. 253, 76 S. W. 464; Hubbell v. Kingman, 52 Conn. 17; Lockwood v. Jones, 7 Conn. 431.) Nor is the bond in the present case similar to an attachment bond, or a redelivery bond in attachment. (Hamilton v. Bell (Cal.) 55 Pac. 758; Stanley v. Chamberlain, 43 N. J. L. 102; Williams v. Robinson et al., 21 Iowa 498; State of Iowa v. McGlothlin, 16 N. W. 137; Blakeley's Trustees v. Bogard, 136 S. W. 616.) A reversal in an attachment suit revives the lien. (Higgins et al. v. Grace, 59 (Md.) 365; Jaffray v. Glaflin Co., 119 Mo. 117, 24 S. W. 761; Treat v. Dunham, 74 Mich. 114; King v. Harris, 34 N. Y. 330; Hubbell v. Kingman, 52

Conn. 17; Harrison v. Trader, 29 Ark. 85.) A reversal restores the parties to their original rights. (Pach v. Gilbert, 7 N. Y. Supp. 336; King v. Harris, 30 Barb. (N. Y.) 477.) One acquiring property rights pending an appeal takes such rights subject to the final decision in the case. (McClung et al. v. Hohl, (Kan.) 61 Pac. 507; Harle v. Langon's Heirs, 60 Tex. 555; Gay v. Paport, 106 U. S. 679; Martin v. Abbott, (Neb.) 100 N. W. 142; Olson v. Leibke, 110 Ia. 594, 81 N. W. 801; Phelps v. Elliott, 35 Fed. 460; Farmers Bank v. First Nat'l. Bank, 66 N. E. 506; Bird v. Gilliam, 125 N. C. 76; Board of Trustees v. Fry, 192 Mo. 552; Ward v. Marshall, 96 Cal. 155; Bryson v. Hartgrove et al., (Tex.) 92 S. W. 820; Dinola v. Allison (Cal.) 76 Pac. 976; Cowdery v. Bank, 96 Am. St. Rep. 128; Buckhorn Plaster Co. v. Consolidated Plaster Co. (Colo.) 108 Pac. 27; Smith & Vaile Co. v. Burns, 72 Miss. 966; Cook v. French, 96 Mich. 525, 56 N. W. 10; Allen v. Halliday, 28 Fed. 261; Carr v. Gates, 96 Mo. 271, 9 S. W. 659; Stout v. Philippi Mfg. Co., 56 Am. St. Rep. 875, 876.) *Pendente lite* means pending the litigation and the bond given in this case was effective, until a final determination of the case. (Haddock v. Haddock, 75 N. Y. App. Div. 565; Bohnert v. Bohnert, 91 Cal. 431; McBride v. McBride, (N. Y.) 23 N. E. 1065; Holleman v. Holleman, 69 Ga. 676; VII Current Law, 106; Brasch v. Brasch, (Neb.) 69 N. W. 392; *Ex Parte* Lohmuller, (Tex.) 129 S. W. 834; McNeil v. McNeil, 19 Pa. Co. Ct. 93.) The case of Clute v. Knies et al., 7 N. E. 181, and of Archer v. Hart, et al., *supra*, are so similar to the case at bar that they should be controlling here, especially when the conditions of the bonds involved are considered.

*Burke & Riner,* in reply.

Any writ issued out of a court of this state pursuant to Chapter 312, Compiled Statutes, which embodies a command to refrain from a particular act is an injunction and the cases cited from California and Oklahoma by plain-

tiff in error are not in point.  The same may be said of
the cases cited in support of plaintiff's contention, that a
restraining order is invalid, unless accompanied by indem-
nity.  When want of consideration is pleaded, there is no
estoppel which can interfere with that defense.  (In Re
Kennedy's Estate, 62 Pac. (Cal.) 64; Tucker v. The State,
11 Md. 322.)  The surety was released by the judgment
of dismissal.  There is nothing in the Constitution of Wyo-
ming that can be fairly urged against the well settled
Ohio doctrine, that a proceeding in error is a new suit.
The real test of the matter is the nature of the appellate
proceeding.  (Wingfield v. Neall, 54 S. E. 47, 60 W. Va.
106.)  The judgment of dismissal was something more
than a mere court order, as appears upon its face.  More-
over, counsel for plaintiff in error in his motion for a new
trial refers to it as a judgment.  It was recognized as a
judgment by this court on appeal.  (Duxstad v. Duxstad,
16 Wyo. 399.)  It was a final decree.  (Freeman on Judg-
ments, 4th Ed., Sec. 29, Pg. 33; Black on Judgments, Vol.
1, Sec. 21, 2nd Ed.)  The authorities cited by plaintiff in
error to the contrary are not in point.  None of them re-
semble, either in facts or law, the case at bar.

POTTER, CHIEF JUSTICE.

The judgment complained of was rendered in an action
upon a bond signed by the plaintiff in error as surety with
Louis Duxstad as principal, and given in a divorce action
to secure the payment of alimony and counsel fees under
the following circumstances:  Anna Duxstad, plaintiff be-
low and defendant in error here, brought an action for
divorce against Louis Duxstad, filing her petition in the
District Court of Laramie County, on May 8, 1906, and
alleging in substance, in addition to the fact of the mar-
riage of said parties and the facts stated to show jurisdic-
tion and cause for divorce, that the defendant was the
owner of real and personal property free from encum-
brance of the aggregate value of $13,500, most of the same
being located in said county;  that plaintiff was without

any property, money, or means of any kind; that she was unable to pay her counsel fees, and because of her physical condition unable to support herself; that defendant was attempting to sell and dispose of all his property and leave the state, and had threatened to do so for the purpose of preventing the plaintiff from obtaining any alimony that might be granted to her. There was a prayer for divorce, for counsel fees and alimony *pendente lite,* and permanent alimony, and that pending the action and until the further order of the court the defendant be restrained and enjoined from selling or in any manner disposing of his property. On the same day that the divorce petition was filed a motion was filed by the plaintiff, alleging that she was without means of conducting the action and without sufficient means for her support during its pendency, and that the defendant was the owner of property of the value of $13,000, and praying an order directing the defendant to pay to the plaintiff a reasonable sum for counsel fees and the sum of $50 per month as temporary alimony during the pendency of the action. On the same day, also, an order was made by the District Judge reciting the filing of the petition for divorce and the averments therein that defendant was threatening to dispose of all his property and remove out of the jurisdiction of the court for the purpose of defeating any judgment for alimony that plaintiff might obtain in the suit, and ordering that the defendant appear before the court on May 22, 1906, at an hour therein stated, and show cause why an order should not be issued restraining him from selling, disposing of or in any other manner alienating any of his property during the pendency of said action, and that in the meantime the defendant, his agents and servants, be restrained and forbidden to suffer or commit any of the said acts until the further order of the court. On May 21, 1906, two orders were made and entered in the action, one of them granting the motion for counsel fees and temporary alimony and the other providing for the bond now sued on. These orders appear to have been entered by agreement of the parties. The order

allowing counsel fees and alimony *pendente lite* recites the presenting of the motion therefor, the presence of the parties by their respective attorneys at the hearing, and that "the parties by their respective attorneys agreeing hereto and the court being duly advised in the premises, the court does say and find that the said plaintiff is entitled to alimony *pendente lite* and also attorney's fees *pendente lite,*" and then proceeds to require that the defendant pay $100 forthwith to plaintiff's attorneys, and the sum of $30 per month to the clerk of the court for the use of the plaintiff as alimony *pendente lite,* the first payment to be made forthwith for the month of May and that thereafter each monthly payment be made on the first day of each month. The other order, omitting the title of the case, reads as follows:

"Order Dissolving Restraining Order Heretofore Issued and Requiring Defendant to Give Bond.

"Comes now the above named plaintiff by M. A. Kline, Esq., her attorney, and comes the above named defendant by W. R. Stoll, Esq., his attorney, answering the order to show cause why a restraining order should not be issued to prevent the defendant from selling or disposing of or in any manner alienating his property during the pendency of the above action, it is agreed by the parties hereto and the court does so find that the order heretofore issued on the 8th day of May, 1906, restraining the said defendant, his agents and servants, and enjoining and forbidding them from selling, disposing of or in any other manner alienating any of defendant's property during the pendency of the action be and the same is hereby dissolved upon the condition, however, that the said defendant do execute a good and sufficient undertaking to the plaintiff as security for obedience to the order of the court made herein requiring the payment of alimony and attorney's fees *pendente lite,* as provided by the order of this court and for obedience to such further orders as may be made in the premises, said undertaking to be in the sum of $5,000, said undertaking to be approved by this court or the clerk there-

of; and that upon the approval of said undertaking the order heretofore issued be dissolved."

So far as the record here shows there were no further proceedings in the case until February 15, 1907, when the bond sued on, dated February 12, 1907, was filed. Omitting the caption stating the venue and title of the cause, the indorsement showing approval by the District Judge, and the justifying affidavit of the surety, the bond reads as follows:

"*Know all Men by These Presents,* That we, Louis Duxstad as principal, and J. T. Snow as surety, of the County of Laramie, State of Wyoming, are held and firmly bound unto Anna Duxstad of said county in the full and just sum of $5,000.00, to be paid to the said Anna Duxstad, her executors, administrators or assigns, to which payment well and truly to be made, we bind ourselves, our heirs, executors and administrators jointly and severally by these presents. Sealed with our seals and dated this 12th day of February in the year of our Lord One Thousand, Nine Hundred and Seven. Whereas, in the above entitled suit depending in the District Court of Laramie County aforesaid, this court entered an order on the 21st day of May, A. D. 1906, dissolving an order of this court heretofore made on the 8th day of May, 1906, restraining the said defendant, his agents and servants, and enjoining and forbidding them from selling, disposing of or in any other way alienating any of the defendant's property during the pendency of the above entitled action, upon the condition, however, that the said defendant do execute a good and sufficient undertaking to the said plaintiff as security for obedience to the order of this court made in the case aforesaid, requiring the payment of alimony and attorneys' fees *pendente lite* as provided by the order of this court, and for obedience to such further orders as may be made in the premises, said undertaking to be in the  sum of $5,000.00, and to be approved by this court or the clerk thereof. *Now, Therefore,* the condition of this obligation is such that if the said Louis Duxstad shall obey the order

of this court made in the above entitled cause requiring the payment of alimony and attorneys' fees *pendente lite* as provided by the order of this court and shall obey such further orders as may be made in the premises, then and in such condition the above obligation to be void, otherwise to remain in full force and virtue.

Louis Duxstad, (Seal)

J. T. Snow      (Seal)"

There were two trials of the divorce case. The first trial occurred in July, 1907, and resulted in a judgment rendered August 31, 1907, dismissing the action upon a finding that the plaintiff had not resided in this state for one year immediately preceding the time of filing her petition. A motion for new trial filed September 10, 1907, was overruled November 8, 1907. A proceeding in error to reverse the judgment was commenced in this court on February 25, 1908, and on March 10, 1909, an order was entered reversing the judgment and remanding the cause to the District Court for further proceedings. (See 17 Wyo. 411, 100 Pac. 112, 129 Am. S. R. 1138.) On March 21, 1908, in disposing of a motion for alimony pending the proceeding in error and a further allowance of suit money and counsel fees, an order was made and entered by this court allowing the said Anna Duxstad the sum of $175 as and for her expenses in conducting the proceeding in error, including counsel fees, and the sum of $30 per month for the support of herself and minor child during the pendency of said proceeding in error from the date of its commencement, and requiring the same to be paid by the said Louis Duxstad. (See 16 Wyo. 396, 94 Pac. 463, 15 Ann. Cas. 228.) In the order of this court reversing the judgment and remanding the cause it was recited that the order of March 21, 1908, making said allowances had not been complied with in any respect and that no part of said allowance had been paid, and a copy of that order was ordered to be transmitted with the mandate on reversal to the District Court to be enforced or proceeded on in said court in accordance with law; and the costs in the Supreme

Court, amounting to $42.75, were taxed against said Louis Duxstad. The case was again tried in the District Court on October 9, 1909, and a judgment was rendered therein on that date granting a divorce as prayed for in the petition, awarding to the plaintiff permanent alimony in the sum of $30 per month, "the same to be paid her on the first day of each and every month," and that she have and recover from the defendant the sum of $817.75, that being the sum found to be due under the order of this court of March 21, 1908; and, also, that she recover her costs in the action, taxed at $100.45.

The present action on the bond was brought against both the principal and surety, but Duxstad, the principal, not being found in the county, was not served with summons and did not appear. The case was tried to the court, a jury having been waived. It was shown by the evidence that the amount of the counsel fees allowed by the District Court order of May 21, 1906, had been paid, and, also, the the monthly allowances for temporary alimony up to and including the installment due July 1, 1907, and that nothing had been paid upon or as ordered by the judgment of October 9, 1909. It was, also, shown that an execution had been issued upon the judgment on March 18, 1910, and returned unsatisfied, the sheriff's indorsement thereon stating that after diligent search he was unable to find any property in the county belonging to the defendant in said action. Upon the pleadings and the evidence, the latter including the proceedings aforesaid in the divorce action, the court found generally in favor of the plaintiff, and further that there was then due her under the terms of the judgment in the divorce case the sum of $918.20, including the taxed costs, and $1,290 permanent alimony, making a total of $2,208.20, exclusive of interest; that there had been a default in the conditions of the bond, and that plaintiff was entitled to recover from the defendant, as surety on the bond, said sum of $2,208.20, exclusive of interest, and to a further judgment or decree requiring the defendant to pay the sum of $30 per month as the same

becomes due under the terms of the judgment in the divorce case, until the entire penal sum of $5,000 named in the bond shall have been exhausted; but that the defendant should be credited with the amount paid by Louis Duxstad as counsel fees and temporary alimony, viz: $550. Judgment was rendered for said sum of $2,208.20, and costs; and it was further ordered that the defendant pay to the plaintiff the sum of $30 per month on the first day of each and every month until the total amount of such payments, exclusive of interest, shall amount to the sum of $2,241.80, and that in the event of his failure to pay the same execution may issue thereon as such installments become due and payable. This judgment was rendered April 14, 1913. There may be some doubt as to the propriety of the form of the judgment with reference to the installments of permanent alimony thereafter becoming due, assuming that a liability on the bond therefor might properly be determined by the judgment, but the question does not seem to be raised here, and we shall not consider it for the reason, if otherwise it should be considered, that our conclusion upon the other points in the case renders it unnecessary.

1. Several objections are urged against the judgment. The one first to be considered presents the question whether any contractual liability was created by the bond, counsel for plaintiff in error contending that the bond was without consideration, on the ground that it was given to obtain the dissolution of the restraining order of May 8, 1906, and that said order was inoperative and void because no bond or undertaking was required of or given by the party procuring it. Without determining the question whether the restraining order was void or ineffective as a result of the failure to require or give a bond or undertaking, there is no difficulty, in our opinion, in sustaining the bond as one made and executed upon a valid and sufficient consideration. It appears to have been voluntarily executed to secure in part the performance of a duty which,

at the time of its execution, devolved upon the principal, named in the bond to support his wife, the obligee, and, beyond that, to comply with an order of court regularly made and entered in the divorce action requiring the principal to pay counsel fees to enable his wife to carry on the action and a monthly allowance for her support during its pendency; and this security for compliance with such an order could have been required in the absence of a restraining order and regardless of the validity or invalidity of the restraining order that had been granted. (Comp. Stat. 1910, Sec. 3936; Wright v. Wright, 74 Wis. 439, 43 N. W. 145; Forest v. Forest, 3 Abb. Pr. Rep. 144, 163; Sapp v. Wightman, 103 Ill. 150, 157.) It is not a sufficient answer to this to say, as counsel for plaintiff in error do say in their brief, that the court did not act upon its authority to require security for obedience to the order for the payment of counsel fees and alimony independently of the restraining order. Having such authority to require security, and having required it, it is immaterial, so far as the question of the consideration for the bond is concerned, that the court saw fit to require it only as a condition to the dissolution of the restraining order. And the order appears to have been made by agreement of the parties without any objection or suggestion that an objection might be made to the validity or operative effect of the restraining order.

But we are unable to agree with the contention that the bond was given solely for the purpose of obtaining a dissolution of the restraining order. We think, on the contrary, that it appears to have been given to prevent a continuance of the restraint, whether by that order or another order that might be made upon the application for an injunction *pendente lite,* which would regularly have come on for hearing May 22, 1906. It is true that the order providing for the bond states that the restraining order of May 8, 1906, shall be and is dissolved upon the condition that the defendant execute a good and sufficient under-

taking, &c.  But it is stated in the beginning of the order
that the defendant by his attorney appeared, and "answer-
ing the order to show cause why a restraining order
should not be issued to prevent the defendant from selling
or disposing of or in any manner alienating his property
during the pendency of the above action, it is agreed," &c.
The parties and the court clearly had in mind the question
of further restraint, and the agreement sanctioned by the
order undoubtedly implied, if it was not so expressed, as
we think the order implies, that on the condition stated
the application for injunction *pendente lite* then pending
and before the court was to be withdrawn or not insisted
on.   And the parties as well as the court no doubt sup-
posed that in carrying out the agreement it would be suffi-
cient to order the dissolution of the restraining order upon
the execution of the bond without stating that the appli-
cation then being heard would be denied on the condition
aforesaid.  We cannot understand the order otherwise than
as intended to relieve the defendant from any further re-
straint on giving the bond, and while the purpose, in view
of the situation, might have been better if not more cor-
rectly stated by making the execution of the bond a con-
dition to the denial of the application upon which the order
to show cause had been made, we think that is the effect
of the order that was entered, construed in connection with
the proceedings and the matter to be disposed of.   There
would be no reason in giving the bond merely to dissolve
the restraining order, leaving the application and order to
show cause undisposed of.

.We have no statute providing for giving or accepting a
bond to dissolve or avoid the granting of an injunction.
But it seems to be settled that without statutory authority
therefor the court may in a proper case, instead of grant-
ing or continuing an injunction, accept a bond with such
conditions as may be deemed proper and sufficient to pro-
tect the rights of the party applying for the injunction.
(2 High on Inj. (4th Ed.), Secs. 1497. 1498; 2 Joyce on

Inj., Secs. 821, 822, 1152.) The power appears to have been more frequently exercised in the Federal courts in patent infringement cases, but the practice is not confined to such controversies. The following may be cited as showing the conditions or circumstances deemed necessary or sufficient to justify an exercise of the power in a particular case, and the usual terms of the bond where required. (Nor. Pac. R. Co. v. St. P. M. & M. Ry. Co., 4 Fed. 688; Kirby v. Kirby, 1 Paige Ch. 261; Jackson Co. v. Gardiner Inv. Co., 200 Fed. 113, 118 C. C. A. 287; Hoe v. Knap, 27 Fed. 204; Edison Elec. L. Co. v. Columbia Incandescent L. Co., 56 Fed. 496; Draper Co. v. Am. Loom Co., 161 Fed. 728, 88 C. C. A. 588; Westinghouse Air-Brake Co. v. Burton Stock-Car Co., 77 Fed. 301, 23 C. C. A. 174; Palmer v. Mills, 57 Fed. 221; N. Y. Belting Co. v. Magowan, 23 Fed. 596; Westfall v. Heisen, 78 Ill. App. 622; Jenkins v. Hope, 1 Law Rep. Ch. Div. (1896) 278.) In Nor. Pac. R. Co. v. St. P. M. & M. Co., *supra,* an injunction was sought to restrain the defendant from constructing its railroad across an alleged right of way of the complainant. On the hearing of a motion to dissolve a temporary injunction in the case the court ordered that it be dissolved upon the execution by defendant of a bond to complainant conditioned that the defendant will pay all damages which may be awarded in favor of complainant by reason of the construction of defendant's line of railway across that of complainant. In disposing of an objection challenging the power of the court to accept the bond, it was said:

"It is not necessary to cite authority to show that to accept such a bond is within the ordinary powers of a court of chancery when proceeding according to the general principles of equity. It is a mode of proceeding, not only authorized by the general principles of equity jurisprudence, but it is in common use in courts of chancery, and especially in federal courts. In patent cases, for example, where it is supposed that an injunction to restrain

the use of a patented article may operate injuriously, the complainant is protected by a bond to account for profits and pay damages instead of an injunction. It is only necessary to add that the federal courts of equity administer the same general principles in all cases and in every state, irrespective of local laws and state practice. If the court has jurisdiction to try and determine a case in equity, it must determine it according to these general principles, which are the same in every state. (U. S. v. Howland, 4 L. Ed. 526, 4 Wheat. 115; Boyle v. Zacharie, 6 Pet. 658, 8 L. Ed. 532; Never v. Scott, 13 How. 268, 14 L. Ed. 140; Noonan v. Lee, 2 Black 499, 17 L. Ed. 278.) It is not necessary, in view of these authorities, to decide what the power of a state court might be in a case of this character; but we see nothing in the statute which in our judgment ought to be construed to forbid a court of chancery of the state to accept a bond under the circumstances disclosed by the record in this case."

In Kirby v. Kirby, *supra*, an action for divorce, there was a motion on the part of the defendant to dissolve an injunction and *ne exeat* issued in the cause, and the complainant applied for the appointment of a receiver, and for a monthly allowance out of the estate of her husband for the support of herself and children during the litigation. The Chancellor held that the injunction and *ne exeat* had been properly issued, though the amount of the bail should be reduced; that the injunction must be continued, and a receiver appointed, with directions to allow to the complainant a stated sum per month out of the property for the support of herself and children pending the litigation, or until the further order of the court. Following the statement of those conclusions the opinion concludes as follows: "But to enable the defendant to continue his employment, as master of the vessel between New York and Baltimore, the receiver is not to be appointed, and the injunction and *ne exeat* are to be dissolved, provided the defendant does, within one week, execute and deliver to

the assistant register of this court a bond, with two suffi-
cient sureties, to be approved of by a master in the sum
of $1,000, conditioned to pay the monthly allowance above
mentioned, and to obey, perform and abide by such other
orders and decrees as may from time to time be made by
the court in this suit."

We have not noticed a suggestion in any of the cases on
the subject that such a bond would be without considera-
tion. In a case in Wisconsin, where, without statutory au-
thority, the court permitted a bond to be given to stay pro-
ceedings, it was contended in an action on the bond that it
was executed without consideration, the Supreme Court
say: "The stay order was one that the trial judge was au-
thorized to grant or refuse in his discretion. It was com-
petent to grant the stay upon reasonable terms. Defendant
gave the security as a consideration for the stay and en-
joyed the benefit of it pending the appeal. That was ample
consideration for the bond." (See also Lamb v. Ewing,
4 C. C. A. 320, 54 Fed. 269; Reiffenstein v. Hooper, 36
U. Can. Q. B. 295.)

2. It is next contended that the plaintiff in error was
released as surety by the judgment of August 31, 1907,
dismissing the action for divorce, except as to alimony and
counsel fees, if any, which had become due and payable
before the date of that judgment and remained unpaid.
It is argued in support of this contention that the bond
was taken and existed merely in place of the injunction;
that if the injunction had been continued it would have
fallen or been dissolved by the judgment, and that the
same rule should be applied to the bond. This argument is
based upon a misconception of the purpose and effect of
the bond. No doubt the bond was taken as a substitute
for an injunction, that is to say, it was given to avoid the
restraint which would have been imposed by an injunc-
tion, and accepted in lieu of that remedy to secure the
right to enforce a compliance with such orders of the court
as are covered by the terms and conditions of the bond.

But the condition of the bond is not that the defendant will refrain from alienating or removing his property, or that the property shall be forthcoming to answer any judgment or order in the cause. On the contrary it provides for the compliance by defendant with orders for the payment of money. The injunction was dissolved when the bond was given; the property of the defendant was then released from restraint as to alienation or removal, and it is immaterial what the effect of the judgment would have been upon an existing injunction. The bond furnished the plaintiff with a security essentially different from that of a restraint upon the disposition of property, and its force and effect depends upon its condition, without regard to the rule that might have applied to an injunction continued in force until the rendition of the judgment dismissing the action. In place of the injunction a contractual liability was given and accepted. Though taken as a substitute for the injunctive remedy, the bond stood in the place of the property, if anything; not, however, in the sense that the property might in turn be substituted for the bond, but to be resorted to instead of the property for the enforcement of the orders mentioned in it to the extent of the amount of the penalty. (Kleeb v. Bard, 12 Wash. 140, (Wash.) 40 Pac. 733; Lamb v. Ewing, 4 C. C. A. 320, 54 Fed. 269; U. S. v. Schooner Little Charles, 1 Brock, 380, 26 Fed. Cas. 982; s. c. 1 Brock, 345, 26 Fed. Cas. 979.)

Kleeb v. Bard was a suit upon a bond given to prevent the granting of an order restraining the defendants in the original action from disposing of certain property in controversy. In disposing of one of the questions the court said: "The bond did more than to take the place of the restraining order. By virtue of its execution the defendants were put in a situation which enabled them to dispose of the property against which relief in the original action was sought. And, this being so, it must be held that the bond took the place of such property." In U. S. v.

Schooner Little Charles, *supra,* a bond was given to obtain the release of a libelled vessel, as permitted by an order of the trial judge directing such release upon the owners of the vessel giving a bond with good and sufficient security to the full amount of the value of the vessel "conditioned to abide and fulfill the further proceedings and final decree of the court, to be had hereafter, upon the subject matter of the seizure and release of the said schooner." At the trial of the case the libel was dismissed, but the sentence was reversed on appeal to the Circuit Court, the cause being then heard before Chief Justice Marshall, and a judgment entered condemning and forfeiting the schooner. Thereupon the principal and surety on the bond were cited to appear and show cause why a decree should not be rendered against them for the amount expressed in the obligation. That matter was also heard before Chief Justice Marshall, who said among other things in disposing of it: "The bond was intended to be substituted for the vessel, and to be acted upon as the vessel would have been acted upon, had it remained in the power of the court. I think myself justified, then, by authority and by reason, in construing the general term, 'the court,' which is used in the condition, as meaning the court which shall ultimately decide the cause." Execution was awarded. It does not appear that any bond had been given to stay the proceedings in that case pending the appeal. But in deciding the cause itself it was contended that the court had lost its jurisdiction by losing possession of the thing to be condemned, and it was argued that the stipulation or bond, which was substituted for the vessel, was irregularly taken and could not therefore be considered as a substitute. In disposing of that objection the learned Chief Justice said: "If, in proceedings in *rem,* the vested jurisdiction of the court could be divested by the loss of the thing, the reason must be, that as the thing could neither be delivered to the libellants, nor restored to the claimants, the sentence would be useless, and courts will

not render judgments which can operate on nothing. But this reason will not apply to any case where the judgment will have any effect whatever; if, for example, the liability of the officer for making the seizure, to damages, be dependent on it, or if the parties have, by consent, substituted other property to abide the fate of the suit. However this may be, the court is not satisfied that its jurisdiction is lost by the circumstance that has occurred." We quote this much from that case to show that the fact that the property could not again be taken into custody was not regarded as sufficient to release the bond or the surety. The giving and acceptance of the bond in that case as in this permitted the property to be removed or disposed of before as well as after judgment. It is clear that producing the property would not have satisfied the condition of this bond, and it is not perceived that the liability thereunder is to be determined by any rule that would have released the property from restraint as to its disposition if such restraint had continued until the judgment. . .

The cases cited in support of the contention as to the discharge of the bond or the surety are all in our opinion clearly distinguishable from the case at bar. We shall not attempt a review of them to explain their distinguishing features, except by referring to three or four, which we apprehend will be sufficient to illustrate our view that they and the other cases cited are not in point here. Before alluding to them it should be stated that it was alleged in the answer and shown by the testimony of the plaintiff in error that the latter, at the time of signing the bond as surety, was indebted to Duxstad, the principal, in the sum of $5,000, and retained the same as security for the liability incurred by him, and that after the judgment of August 1907, was rendered, and relying thereon, he paid to Duxstad upon his demand therefor the full amount of said indebtedness, thereby releasing his only indemnity, and that he cannot again be secured for the reason that Duxstad has removed from the state to parts unknown, leav-

ing no property here; and some of the cases cited are supposed to sustain the contention that the release of the surety's indemnity under the circumstances stated in reliance upon the judgment resulted in his discharge from further liability. The first of the cases cited to which we shall refer is Hamilton v. Bell, 123 Cal. 93, 55 Pac. 758.) That was an action brought against the sureties upon a re-delivery bond or undertaking given to release property from attachment under a statute providing for such a bond conditioned "to the effect, that in case the plaintiff recover judgment in the action, defendant will, on demand, re-deliver the attached property so released to the proper officer, to be applied to the payment of the judgment, or, in default thereof, that the defendant and sureties will, on demand, pay to the plaintiff the full value of the property released." Upon a trial of the action in which the property had been attached the court granted the defendant's motion for a non-suit. That judgment was reversed on appeal and upon another trial occurring after the reversal the plaintiff recovered judgment. Demand having been made for a re-delivery of the attached property or the payment of its value the action was brought upon the bond. In reversing a judgment in favor of the plaintiff in that action the Supreme Court held that while the judgment upon the second trial was rendered in the same action, the liability of the sureties upon the undertaking did not continue until the judgment was rendered. It is clear from the court's discussion of the question that its conclusion was based upon a consideration of the conditions of the bond as affected by the dissolution of the attachment, which it held had occurred as a result of the judgment of non-suit. Upon the theory that the attachment was dissolved by the judgment and not revived by the order of the appellate court reversing the judgment the sureties on the re-delivery bond were held to have been discharged. Upon the theory stated the court reasoned that the attachment having been dissolved by the judgment

of non-suit, neither the plaintiff nor the officer had any further claim upon the property under the writ, and, there-fore, there remained no obligation to re-deliver and a default in the conditions of the bond was impossible. A very different situation from that presented by the conditions of the bond in the case at bar. It is to be observed that the giving of the re-delivery bond did not discharge the attachment but only released the property, the bond standing in its place subject to its conditions, and it was not because the property had been released, but because the attachment was finally discharged by the judgment that the sureties were held to be discharged.

Without approving or disapproving the doctrine of the case cited it may be said that there seems to be respectable authority to the contrary. In Higgins et al. v. Grace, 59 Md. 365, a verdict and judgment was rendered in favor of the defendants in an attachment suit and a few days later the court quashed the attachment. The appellate court said that the judgment dissolved the attachment subject only to revival by reversal of the judgment, and, holding the judgment to be erroneous, it was reversed, and also the order quashing the attachment. In Stanley v. Chamberlan, 43 N. J. L. 102, it appeared that in an attachment suit a non-suit was ordered, the order providing that the attached property be released and the sureties on the re-delivery bond be discharged. Subsequently the non-suit was set aside and the cause continued, and upon a trial on the merits judgment was rendered in favor of the plaintiff. An action on the bond was defended on the ground that the order of non-suit released the sureties. The court said: "The bond sued on is conditioned for the return of the goods seized under the attachment, if judgment be recovered against the defendant by the plaintiff. The judgment contemplated in this condition is a final judgment in the suit. Such judgment was rendered and proper proof of it was made in the cause. The event, then, was present on which the obligors by the terms of their deed had en-

gaged that the goods should be delivered by the defendant, and the failure to make such delivery was a breach of the condition of the bond, if it still had vitality." The court then proceeded to consider the effect of the judgment for non-suit upon the attachment and the bond and held that while no liability would have arisen on the bond if the suit had stopped with such judgment, since a final judgment in the plaintiff's favor was indispensable to any right in her favor under the bond, the judgment itself was within the control of the court and liable to be, in its discretion, annulled to make way for trial and final determination of the cause upon its merits; and that when such power of the court was exercised it swept the annulled judgment, with all its incidents, from the record, as effectually as if it had never taken place, and that no rights had vested in those who had executed the bond through the judgment of non-suit which precluded the court from setting the judgment aside and opening the cause for trial upon the merits. A judgment rejecting the defense and allowing a recovery upon the bond was held to be proper. (See also Jaffray v. Claflin Co., 119 Mo. 117, 24 S. W. 761.)

The Old Hickory Distilling Company v. Bleyer, 74 Ga. 201, is another of the cases cited by counsel for plaintiff in error in support of the contention that the surety was discharged by the first judgment, and the following paragraph from the opinion is quoted in the brief as strongly bearing upon the question:

"The bill was properly dismissed on demurrer, and the dismissal carried with it the interlocutory orders made thereon, and the bond given in compliance with such orders. The effect of the decree was to extinguish the bond and release the surety; so that the latter part of the order to that effect, if not superfluous, merely embodied the inevitable legal conclusion, and was doubtless inserted *ex abundanti cautela.*"

If the bond here sued on had been given to secure the payment of any judgment that might be recovered by the plaintiff in an action, and the plaintiff had failed to recover a judgment in either the trial or appellate court, but a judgment had been rendered in favor of the defendant and affirmed, then the case and the paragraph quoted might have been in point. In the case cited the defendants were ordered to show cause "why the prayer of the complainants, and especially so much thereof as prays the appointment of a receiver and the granting of the writs of *ne exeat* and injunction should not issue and be granted." The defendants appeared, and to show cause why the temporary injunction and the restraining orders should be dissolved filed a general demurrer to the bill, and then, as stated in the opinion: "Upon hearing this irregular and altogether unusual application, the judge passed an order 'that the injunction be dissolved *pro tanto*, except as to the writ of *ne exeat;* that is to say, the defendant, Bleyer, will give bond in the sum of one thousand dollars, payable to complainants, to make good any judgment obtained by complainants, upon doing which the writ of *ne exeat* is refused.'" Under this order, the defendant gave the bond required, and thereafter took a bill of exceptions to the decision, and presented it by writ of error to the appellate court. When reached in its order on the call of the docket, the appellant failing to appear and prosecute, the proceeding was for that reason dismissed, and the judgment excepted to was affirmed, that is to say, the order for the bond and refusing the writ of *ne exeat* upon its execution was affirmed under the circumstances stated. It further appears from the opinion that upon the return of the cause to the trial court the defendant appeared and demurred to the bill upon additional and special grounds, and also filed a motion to dismiss the bill, or in default thereof to vacate the writ of *ne exeat,* cancel the bond given thereunder, and discharge the surety. The demurrer and motion were heard together, and each was sustained; the bill was

ordered to be dismissed, the writ of *ne exeat* discharged
and the bond cancelled and set aside. The decree was ex-
cepted to by the complainants, and taken to the appellate
court for review upon assignment of errors. That was the
case heard by the appellate court, upon consideration of
which the judgment was affirmed, and, as shown by the
paragraph above quoted, it was held that the bill was prop-
erly dismissed, and that being so, that the dismissal carried
with it the interlocutory orders made thereon, and the bond
given in compliance with such orders. The reason and
propriety of the statement found in the quoted paragraph
is apparent. The bond was given to make good any judg-
ment that the complainants might recover in the cause.
They recovered no judgment but their bill was dismissed,
and the order dismissing it was affirmed. We are unable
to see that the case has any bearing upon the question
now before this court.

In support of the proposition that by parting with his
security under the circumstances above stated, after said
judgment of August, 1907, and before its reversal or the
commencement of the proceeding in error, the surety be-
came released from liability under the bond for alimony or
counsel fees that might thereafter be ordered to be paid,
counsel urges for our consideration the principle that a sub-
sisting judgment, though afterwards reversed, justifies all
acts done in enforcing it prior to reversal, and cite several
cases applying the principle, among them being Bank of
U. S. v. Bank of Washington, 6 Peters 8, 8 L. Ed. 299,
which is relied on as direct authority sustaining the right
of the principal to demand the money left with the surety
for his indemnity at the time it was demanded, and justi-
fying the surety's release of the indemnity so as to dis-
charge him from any liability to plaintiff under any further
orders that might be made in the cause. In that case the
principle was announced, quoting from the syllabus:
"Though, after the reversal of an erroneous judgment, the
defendant has a right to recover back what he may have.

paid, by a writ of restitution, or *scire facias,* or an action, at law against the creditor, yet what is done under the execution pursuant to its precept is valid, and, so far as strangers or third persons are concerned, is final." Briefly stated, the facts in the case were as follows: While a judgment for money was in full force, and before the allowance of a writ of error, the judgment creditors sued out an execution against the defendant, the Bank of Washington, and enclosed it to the cashier of the office of discount and deposit of the Bank of the United States at Washington with an indorsement which was understood by the cashier as indicating that the execution was sent or deposited with him for collection. He caused the execution to be presented to the defendant bank, which thereupon paid the amount thereof, giving notice, however, that it intended to appeal the case to the Supreme Court and that said office of discount and deposit would be expected, if the judgment was reversed, to refund the amount. Upon receiving the money so paid it was deposited by the cashier to the credit generally of one of the judgment creditors as requested by the indorsement on the execution, and thereafter it was applied according to directions given by such creditor. On the reversal of the judgment the Bank of Washington sued to recover from the Bank of the United States the money which had been received upon the execution. It was not denied that the Bank of Washington was entitled to restitution in some form or manner, but it was held that recourse could not be had to the collecting bank, for the reason that when the money was paid the judgment was in full force, no writ of error allowed, or any measure taken which could operate as a supersedeas or stay of the execution; and, therefore, whatever was done under the execution, towards enforcing payment of the judgment, was done under authority of law. In discussing these reasons the court said:

"Had the marshal, instead of the runner of the bank, gone with the execution and received the money, or coerced

payment, he would have been fully justified by authority of the execution; and no declaration or notice on the part of the Bank of Washington of an intention to appeal to the Supreme Court, would have rendered his proceeding illegal, or made him in any manner responsible to the defendants in the execution. Suppose it had become necessary for the marshal to sell some of the property of the bank to satisfy the execution, the purchaser would have acquired a good title under such sale, although the bank might have forbid the sale, accompanied by a declaration of an intention to bring a writ of error. This could not revoke the authority of the officer, and while that continued, whatever was done under the execution would be valid. It is a settled rule of law, that upon an erroneous judgment, if there be a regular execution, the party may justify under it until the judgment is reversed; for an erroneous judgment is the act of the court. * * * * If the marshal might have sold the property of the bank and given a good title to the purchaser, it is difficult to discover any good reason why a payment made by the bank should not be equally valid, as it respects the rights of third persons. In neither case does the party against whom the erroneous judgment has been enforced lose his remedy against the party to the judgment. On the reversal of the judgment, the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost. * * * * But as it respects third persons, whatever has been done under the judgment whilst it remained in full force is valid and binding." * * * * * "When the money was paid, there was a legal obligation on the part of the Bank of Washington to pay it, and a legal right on the part of Triplett and Neale (the judgment creditors) to demand and receive it, or to enforce payment of it under the execution. And whatever was done under that execution, whilst the judgment was in full force, was valid and binding on the Bank of Wash-

ington, so far as the rights of strangers or third persons are concerned. The reversal of the judgment cannot have a retrospective operation, and make void that which was lawful when done."

We cannot agree that the case sustains the proposition contended for. It seems to us that the argument disregards the terms and conditions of the bond by failing to consider whether they bound the surety in case of default in complying with orders made after said judgment of 1907. The security was released without the consent of the plaintiff, and so far as the record shows the plaintiff knew nothing of the taking, retaining or release of such security.

. The case of Porter v. Small, 40 L. R. A. N. S. 1197; Ann. Cas. 1914 C. 536, 62 Or. 574, 124 Pac. 694; 120 Pac. 393, is also cited in support of the general principle announced in Bank of U. S. v. Bank of Washington, as to the effect of a judgment while in force upon an act done under the authority thereof. It was held in that case that where a decree is self-executing, and no stay of proceedings is asked or taken on an appeal therefrom which results in its reversal, a party thereto may assume that the decree is lawful and proper, and will not subject himself to an action for tort in acting on that assumption. The decree there under consideration was rendered in a cause involving priorities of right to the use of water for irrigation, and it granted to Small, one of the parties, a prior right to the use of a stated quantity of water. The amount of water thus allowed to him was materially reduced on appeal, and an action was thereafter brought by the successors of the successful party in the appeal against Small for damages alleged to have been caused by his diversion, during the period between the rendition of the decree and its modification, of the water to which it was finally held he was not entitled. It was held that the act of so diverting the water was not a tort when performed, because authorized by the decree, and it could not, therefore, become

a tort by relation, upon reversal of the decree. The opinion contains an excellent review of the leading authorities on the question.

Assuming the correctness of the principle announced in each of the two cases referred to, we are not convinced that it is applicable here, or that the cases themselves are in point on the question now presented to this court. The matter of the surety's alleged indemnity was not involved in the divorce action. The arrangement or contract of indemnity was entirely between the principal and surety, and what the terms of the contract were we are not informed further than this: that a stated sum of money owing by the surety to the principal was retained by the surety as his security against the liability assumed by signing the bond. The judgment which was subsequently reversed did not direct the release by the surety of the money retained to secure him, nor did it adjudicate the right of the surety to retain or the right of the principal to demand and recover such money. The judgment might, we suppose, have been used as evidence in a dispute between the principal and surety concerning their respective rights to the money, its force as such depending upon its effect with respect to the continuance or extinction of the liability of the surety under the bond, for unless that liability had been fully discharged or ended, the principal would not be entitled to the money. (22 Cyc. 95; 32 Cyc. 242, 243; Mandigo v. Mandigo, 26 Mich. 349; Smith v. Wigler, 72 N. J. Eq. 559, 65 Atl. 900; Shea v. Fidelity & Casualty Co., 39 Misc. Rep. 107, 78 N. Y. Supp. 892; Cook v. Casler, et al., 76 App. Div. 279, 78 N. Y. Supp. 661.) But the principle relied on does not, as we understand it, refer to the probative force of a judgment, but rather its force as a compulsory or authoritative order upon a determination of issues or a matter presented for adjudication, so that to bring an act sought to be justified within the scope or operation of the principle it must be one done in obedience to the judgment, or under its determinative au-

thority.   In our opinion that is not the situation here, for the point as to the continuance or extent of the surety's liability was not determined by the judgment.

Counsel also cite several cases holding a surety on a bail bond to be discharged by a judgment in favor of the principal, notwithstanding a subsequent reversal of the judgment, on the ground that while the judgment remained in force it deprived the surety of the right given him by law to escape further liability by surrendering his principal; and it is argued that these cases are squarely in point upon the situation in the case at bar.   But we think they are not much in point.   A bail bond conditioned for the appearance of the principal presents a situation materially different from that presented by the conditions of the bond here under consideration.   We cannot agree with counsel that the dismissal of the divorce action by a judgment afterwards reversed necessarily deprived the surety, while the judgment remained in force, of the remedy given a surety by Section 5030, Compiled Statutes 1910, to obtain by action against the principal indemnity for his liability, for, as above indicated, the surety's right to obtain indemnity or retain that already received would depend not alone on the fact that such a judgment had been rendered, but whether under the conditions of the bond the liability of the surety had terminated; so that if there could be any further liability, in view of such conditions—that is to say, if, in case of a reversal of the judgment the surety would be bound under the terms and conditions of the bond for any default occurring after the judgment was rendered, then it can not be said to have had the effect to terminate the surety's liability.   If the surety was discharged as a result of said judgment it is because the terms and conditions of the bond, properly construed, provide for no further liability, and not for the reason that the surety, without the consent of the plaintiff, released his indemnity.

3.   The other objections urged against the judgment relate to the amount of recovery and cover practically all the

items and the entire amount of damages included in the judgment. It is contended that the recovery of any amount allowed as permanent alimony in the divorce action is not authorized for the reason that orders for the payment of permanent alimony are not within the condition of the bond; and that there is no liability on the bond for the amount allowed by this court as temporary alimony pending the proceeding in error or the amount allowed for the expense of conducting that proceeding, including counsel fees, for the reason that the bond cannot be extended to cover a new suit or its consequences, and that a proceeding in error, under our statute, is a new suit, since it is not a mere transfer of the cause as upon appeal, but is commenced by petition and summons in error. We will consider these objections in the order stated.

The contention as to permanent alimony is based upon the language of the condition of the bond, viz: "that if the said Louis Duxstad shall obey the order of this court made in the above entitled cause requiring the payment of alimony and attorneys' fees *pendente lite* as provided by the order of this court and shall obey such further orders as may be made in the premises, then the above obligation to be void," &c. And the question presented is whether the words *"and shall obey such further orders as may be made in the premises,"* refer to and cover orders for permanent alimony as well as orders for temporary alimony or alimony *pendente lite.* The condition thus quoted follows the language of the order requiring the giving of the bond, that order having directed the execution by defendant of "a good and sufficient undertaking to the plaintiff as security for obedience to the order of the court made herein requiring the payment of alimony and attorney's fees *pendente lite,* as provided by the order of this court and for obedience to such further orders as may be made in the premises." As previously stated in this opinion an order was entered for the payment of alimony *pendente lite* and counsel fees on the same day that the order was

entered for the giving of the bond, and both orders appear
to have been entered by agreement of the parties. The
solution of the question stated manifestly depends upon
the meaning and effect of the words "in the premises" in
the connection in which they are used. There can be no
uncertainty as to the meaning of the word "premises" or
the words "in the premises" in a document or written in-
strument, for it and they have a meaning generally well
understood and the authorities are all agreed concerning
it. "Premises," when used in an instrument of writing,
is defined in 31 Cyc., at page 1163, as, "previous matter
contained therein and concerning which something is pro-
posed; that which has been before mentioned; that which
is before; introduction; statements previously made."
And in Am. & Eng. Ency. of Law as follows: "The word
'premises' means that which is before; introduction; state-
ments previously made. The word in an instrument of
writing implies a reference to previous matter contained
therein, and concerning which something is proposed."
Bouvier's Law Dictionary defines the word thus: "That
which is put before. The introduction. Statements pre-
viously made." In Black's Law Dictionary, we find the
following definition: "That which is put before; that
which precedes; the foregoing statements. Thus, in logic,
the two introductory propositions of the syllogism are
called the 'premises,' and from them the conclusion is de-
duced. So, in pleading, the expression 'in consideration of
the premises' frequently occurs, the meaning being 'in con-
sideration of the matters hereinbefore stated.'" And in
Rapalje & Lawrence's Law Dictionary it is said: "In the
primary sense of the word, 'premises' signifies that which
has been before mentioned." The word is defined in Web-
ster's International Dictionary as "matters previously
stated or set forth," and the words "in the premises" as
meaning "in regard to the matter or subject before men-
tioned or in question." The Century Dictionary gives sub-
stantially the same definition, viz: "In law, what has

been stated before or above (in a document) ; the afore-
said." And "in the premises" as meaning: "In relation
to a subject which has been mentioned; as, he had no au-
thority in the premises." The following definitions are
given in the Standard Dictionary: "Foregoing statements;
facts previously stated; as, in pleadings, 'In consideration
of the premises, the plaintiff is entitled to recover,' or 'the
court being fully advised in the premises, do find,' " &c. ;
and "in the premises" as meaning: "with reference to
something already stated; as, I shall take the proper action
in the premises." See also Tutonia Ins. Co. v. Mund, 102
Pa. St. 89, 93, where it is said: "The word 'premises' in
an instrument of writing implies a reference to previous
matter contained therein, and concerning which something
is proposed." In construing the word "premises" as used
in an injunction bond stating that "in consideration of the
premises, and of the issuing of said restraining order," the
sureties undertake, &c., it was said in the California case of
Alaska Imp. Co. v. Hirsch, 119 Cal. 249, 47 Pac. 124, 51
Pac. 340, that the word refers "of course, to the recitals as
to the bringing of the suit, the restraining order, and the
order requiring the bond." In Meese v. Northern Pac. Ry.
Co., 127 C. C. A. 622, 211 Fed. 254, a section of the statute
of the State of Washington, known as the "Workmen's
Compensation Act," was under consideration, which, after
declaring that the common-law system governing the rem-
edy of workmen against employers for injuries received in
hazardous work is inconsistent with modern industrial con-
ditions, and stating certain results thereof, declared further:
"that all phases of the premises are withdrawn from pri-
vate controversy," &c., it was said, construing this provision
of the statute, by Morrow, Circuit Judge, delivering the
opinion of the Circuit Court of Appeals of the Ninth Cir-
cuit: "The scope of this provision of the act is clearly
limited primarily by the word 'premises.' All phases of the
'premises' are withdrawn from private controversy. What
are the 'premises'? The 'premises' are the matters stated

in the context, namely, the common-law system governing the remedy of workmen against employers for injuries received in hazardous work."

Obviously, the words "in the premises," as used in expressing the condition of this bond import a reference to the subject matter of the order previously mentioned, namely, the payment of alimony and attorney's fees *pendente lite.* It is equally clear that the words *"pendente lite"* were used to explain or designate the order mentioned as having been made, and apply particularly to "alimony," for they were not needed to explain attorney's fees, while there are two kinds of alimony, permanent and temporary, or alimony *pendente lite;* and the order already made was one allowing alimony *pendente lite.* Therefore, the words of the condition "and shall obey such further orders as may be made in the premises" refer only to such further orders as may be made relating to the same subject matter as that covered by the previous order, that is to say, attorney's fees and alimony *pendente lite.*

But we are asked to construe the bond as covering permanent alimony by enlarging the meaning of the terms thereof upon a consideration of the facts and circumstances surrounding its execution. And it is argued that such a construction is justified by the fact that permanent alimony was prayed for in the petition in the divorce suit, and that an injunction *pendente lite* was applied for and the temporary restraining order granted to protect the wife against a disposition of the husband's property which might interfere with her right to have and recover permanent as well as temporary alimony. It is also urged that the amount fixed for the penalty of the bond indicates an intention to secure more than the amount that might be allowed for temporary alimony and counsel fees. This matter of construction, in view of the circumstances referred to, is not free from difficulty, but we think that the suggestion, if followed, would result not merely in a reading of the bond in the light of

the surrounding circumstances, but in so enlarging the meaning of the language used in expressing the terms of the contract as to add an entirely new provision. We are here considering the contract of a surety, one against whom an obligation cannot be implied, but is liable only upon his agreement to become liable, and entitled to stand upon the strict terms of his agreement, when the terms are ascertaind. (1 Brandt on Sur. & Guar. (3rd Ed.), Secs. 106, 107.) It is a familiar and well settled rule that the liability of a surety cannot be extended by implication beyond the terms of his contract nor extended unfairly by a strained construction. (Id.; Lamb v. Ewing, 4 C. C. A. 320, 54 Fed. 269.) But in construing a contract of suretyship the same rules apply that control in the construction of other contracts, that is to say, the true intent and meaning of the contract is to be ascertained or determined according to the rules applicable to contracts generally. The principle is stated in Brandt on Suretyship and Guaranty (3rd Ed.), Section 107, as follows:

"The rules for construing the contract of a surety or a guarantor should by no means be confounded with the rule that sureties and guarantors are favorites of the law, and have a right to stand upon the strict terms of their obligation. * * * In the construction of the contract of a surety or guarantor, as well as of every other contract, the true question is: What was the intention of the parties, as disclosed by the instrument read in the light of the surrounding circumstances? * * * The meaning of the words is not affected by the fact that the party sought to be charged is principal, surety or guarantor. On the other hand, a surety or guarantor usually derives no benefit from his contract. His object generally is to befriend the principal. In most cases the consideration moves to the principal, and he would be liable upon an implied contract, while the surety or guarantor is only liable because he has agreed to become so. He is bound by his agreement, and nothing else. No implied liability exists to charge him. It

has been repeatedly decided that he is under no moral obligation to pay the debt of his principal. Being then bound by his agreement alone, and deriving no benefit from the transaction, it is eminently just and proper that he should be a favorite of the law, and have a right to stand upon the strict terms of his obligation."

Of course, the purpose in construing any contract is to discover the intention of the parties, and it is a fundamental rule of such construction that a court may consider the situation of the parties at the time of the execution of the conract, and, in view of all the facts and circumstances surrounding the making of the contract, ascertain what the parties intended by its terms, a rule particularly applicable where there is ambiguity in the language employed or doubt as to its meaning. But the object of construction is not to reform the contract. Where the meaning is clear the surrounding circumstances cannot be considered to contradict the terms of the contract, for the court is not authorized, when engaged merely in construing an instrument, to insert therein a provision other than or different from that which the language used clearly indicates, and thereby, in effect, make a contract for the parties. (4 R. C. L., pp. 56, 57, Par. 17, 18.) A careful consideration of the terms of this bond has not convinced us that the language employed is ambiguous or the meaning thereof doubtful. It has only been made to seem ambiguous and doubtful by showing a situation that might have resulted in an agreement for and the execution of a bond to secure the payment of permanent alimony as well as alimony *pendente lite,* and the argument seems to us to amount to this: That since such an agreement might have been made and such a bond might have been executed the court should declare that to be the effect of the bond that was executed. Giving every consideration to the circumstances under which this bond was executed to which they seem to be entitled, we are not satisfied that they show an intention to cover by the language employed in stating the condition of the bond an order or judgment

for permanent alimony. The most that can be said in that respect is that the plaintiff was in a situation to insist upon her application for an injunction *pendente lite* unless the payment of permanent as well as temporary alimony was otherwise secured, though the court might have denied such application, and upon granting it might have required the giving of a bond to secure the defendant against damage if it should be finally decided that the injunction ought not to have been granted. But it does not clearly appear that the injunction was insisted upon unless a bond or other security was given to secure permanent alimony. ·On the contrary, it appears that the parties to the divorce suit agreed to a dissolution of the restraining order that had been granted, implying a withdrawal of the application for an injunction pending the suit, upon the very condition stated in the bond, viz: that a good and sufficient undertaking be executed for an obedience to the order of the court "made herein requiring the payment of alimony and attorney's fees *pendente lite,* as provided by the order of this court and for the obedience to such further orders as may be made in the premises." Certainly in this statement of the condition of the bond to be executed, in the order confirming the agreement of the parties and giving it effect, there is no clear reference to an order allowing permanent alimony nor a clear provision for a bond to secure the payment of permanent alimony.

The circumstances under which a contract is executed may furnish the light in which to read the terms of the contract and ascertain thereby the intention of the parties, but the construction of the contract is not to be based alone upon such surrounding circumstances. It would be unprofitable to speculate as to the reason for taking a bond limiting the liability for alimony to allowances *pendente lite;* there are possible reasons which readily occur to the mind, aside from inadvertence or a misunderstanding of the effect of the language used, which we think make it impossible to say that the liability was not intended to be so limited. The

agreement was not entered into or prepared by persons un-
skilled in the scrivener's art or unlearned in the use of
language.  We think it is fairly to be inferred that the ar-
rangement resulting in the order for giving the bond was
made by or between counsel in the divorce suit and it ap-
pears that the order stating the agreement was drawn by
defendant's counsel and approved by counsel for the plain-
tiff, and presumably it stated all that the parties had agreed
to.  Even if the court would be justified, upon a sufficient
showing that the parties so intended, in construing the bond
to cover a liability for permanent alimony, we are unable
to find such an intent to be clearly or sufficiently shown by
the facts and circumstances aforesaid.  While the amount
of the penalty of the bond—$5,000—seems to have been
more than ample as a penalty to cover alimony *pendente lite*
and attorney's fees in the particular suit in which this bond
was given, when considered in the light of subsequent
events, it cannot be regarded as sufficient either standing
alone or in connection with the other facts to indicate an
intention by the parties that it should secure the payment
of permanent alimony.  We are constrained to hold, there-
fore, that the amount allowed as permanent alimony was
improperly included in the judgment.

We are of the opinion, however, that the allowances
made by this court for alimony pending the proceeding in
error and counsel fees are within the condition of the bond,
and that the plaintiff was, therefore, properly allowed to
recover the amount thereof.  It was clearly the intention of
the parties, as disclosed by the terms of the bond and the
order pursuant to which it was given, to secure obedience to
all orders for the payment of alimony *pendente lite* and
counsel fees, to enable the wife to carry on the action for
divorce to final termination.  That the wife is entitled, upon
a proper showing, to alimony pending an appellate proceed-
ing to review the judgment or decree in an action for di-
vorce is well settled, whether she or the husband be seek-
ing appellate review.  (1 R. C. L., pp. 881, 882. Par. 20-22;

Jones v. Jones, 2 L. R. Prob. & Div. 333; Pleyte v. Pleyte, 15 Colo. 125, 25 Pac. 25; Bordeaux v. Bordeaux, 29 Mont. 478, 75 Pac. 359; Dowling v. Dowling, 181 Mo. App. 675, 164 S. W. 643; Brasch v. Brasch, 50 Neb. 73, 69 N. W. 392; Bruce v. Bruce, 160 Cal. 28, 116 Pac. 66; McBride v. McBride, 119 N. Y. 519, 23 N. E. 1065; Bohnert v. Bohnert, 91 Cal. 428, 27 Pac. 732; Phillips v. Phillips, 27 Wis. 252.) That principle was recognized by this court in the case where the allowances now under consideration were made, viz.: Duxstad v. Duxstad, 16 Wyo. 396, 94 Pac. 463, 15 Ann. 228, though the right thereto pending the proceeding in error was not questioned in the case, but the application was opposed on the ground that it should be made to the district court, and that this court having only appellate jurisdiction was without authority in the matter. The cases above cited, and others to the same effect, maintain the right to such allowances on the ground that they are necessary and proper to enable the wife to carry on or defend the divorce action, and they treat and refer to that action as still pending in the trial court, notwithstanding the appellate proceeding, whether on appeal or error.

In Bordeaux v. Bordeaux, *supra,* a case denying the jurisdiction of the appellate court to make the order while upholding the right generally to have such allowances made, it was said, quoting from a former decision of the court in Bordeaux v. Bordeaux, 26 Mont. 533, 69 Pac. 103: "The action—the entire case—is not transferred by appeal. Questions of law only are presented on appeal, even where the relief sought is equitable in character. The action itself is still pending in the lower court. On an appeal only questions of law are tried. * * * Except in so far as affected by the appeal, the cause remains in the district court, the primary forum." And it was held that "the district court had jurisdiction and power, notwithstanding the judgment, at any time prior to the determination, of the action on appeal from the judgment, or prior to the expiration of the time of appeal, to require the

husband to pay any money necessary to enable the wife to support herself and to further prosecute or defend the action."

In McBride v. McBride, *supra,* it was held, where the husband appealed from a judgment granting a limited divorce to the wife, that the action was pending until the final determination of the appeal, within the meaning of the statute authorizing the court, during the pendency of the action, to make orders directing the husband to pay such sums as may be necessary to enable the wife to prosecute or defend the action, the court saying: "Although a judgment, final for the purpose of an appeal, is entered, the action is still pending. The jurisdiction over the parties remains through the further steps regularly taken, and the action is in no sense or respect ended. By the terms of Section 1769 of the code, the allowances may be made 'from time to time' 'during the pendency of the action,' and is described 'as necessary to enable the wife to carry on or defend the action.' That is one of the purposes to be subserved, and the need of it is quite as pressing and obvious after judgment, and pending the appeal, as before." In that case the judgment had been in the wife's favor, but reasons equally as strong require similar allowances where the judgment is opposed to the alleged rights of the wife, for having the right to have the unfavorable judgment reviewed, the allowances may, obviously, be as necessary as where the judgment is in her favor, in order to enable her to maintain the action until its final and conclusive determination. And the cases cited are in line with the general rule upon the subject as to the "pendency" of an action after judgment, for the purpose of a motion for new trial, the commencement and prosecution of an appellate proceeding, or for the hearing of any matter that may properly be presented in the cause after judgment. (Wegman v. Childs, 41 N. Y. 159; Sweetser v. Fox, 43 Utah, 40, 134 Pac. 599; Salt v. Cooper, 16 L. R. Ch. Div. 544; Ulshafer v. Stewart, 71 Pa. St. 170; State ex rel.

Jones v. Super. Court, 78 Wash. 372, 139 Pac. 42; Sanford v. Sanford, 28 Conn. 5; Chapin v. James, 11 R. I. 86, 23 Am. Rep. 412; Robbins v. Robbins, 138 Mo. App. 211, 119 S. W. 1075; Ellis v. Ellis, 8 L. R. Prob. Div. 188; Brown v. Foss, 16 Me. 259; U. S. v. Taylor, 44 Fed. 2; M. & R. Furniture Co. v. Sampson, 40 Fed. 805.)

In Salt v. Cooper, *supra,* it was said: "A cause is still pending even though there has been final judgment given, and the court has very large powers in dealing with the judgment until it is fully satisfied. It may stay proceedings on the judgment, either wholly or partially, and the cause is still pending, therefore, for this purpose, as it appears to me, and must be considered as pending, although there may have been final judgment given in the action, provided that judgment has not been satisfied." It was said in Wegman v. Childs, *supra,* that a "suit must be regarded as pending, whether the same has proceeded to final judgment or not, providing any further judicial action may be required in the suit." And in Sweetser v. Fox, *supra,* the Utah statute providing that an action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied, is said to be merely declaratory of the common law rule that an action is pending in a court, though judgment has been recovered therein, as long as such judgment remains unsatisfied. It was held in that case, however, that after judgment actions do not remain pending for all purposes, but only for the purpose of enforcing them and to institute the proceedings provided by law to reverse or modify them. A like statute in Oregon was construed the same way in Day v. Holland, 15 Oreg. 464, 15 Pac. 855.

In Ulshafer v. Stewart, *supra,* it was said in the opinion of the court delivered by Sharswood, Justice: "An ejectment removed by a writ of error to this court is still 'a writ of ejectment,' pending." And in Sanford v. Sanford, *supra,* it was· held that a suit was not at an end by the

granting of a non-suit, "for the right to set it aside proves that for that purpose the suit was still pending." In the Nebraska case of Brasch v. Brasch, above cited, it appeared that the trial court had dismissed the action of a wife for divorce, taxing the costs against the husband, and awarding her the sum of $100 for the costs and expenses incurred in prosecuting the suit. An appeal was taken from the latter part of the decree and it was urged that the court, having dismissed the wife's action, was without authority to render a judgment against the husband for the costs and expenses of the suit. Referring to the statute of Nebraska permitting the court in its discretion to require the payment by the husband of any sum necessary to enable the wife to carry on or defend the suit during its pendency and to decree costs against either party, it was held that the contention that the decree appealed from was not rendered during the "pendency of the action" within the meaning of the statute was not tenable, and it was said: "While no provision of our code declares for what length of time an action shall be deemed pending, we think it pends at least from its commencement until it is finally determined on appeal or error, or until the time fixed by statute for prosecuting an appeal or an error proceeding has expired."

Many other authorities might be cited to the same effect. It is clear, we think, that the divorce action remained pending in the district court after the judgment upon the first trial dismissing the wife's petition, for the purpose of filing, hearing and determining the motion for new trial, and the commencement within the time limited by statute therefor of the proceeding in error and the prosecution thereof. And there can be no doubt that at least after the commencement of the proceeding in error the district court would have had jurisdiction and authority to grant an order requiring the husband to pay a reasonable amount as counsel fees and a reasonable amount for the support of the wife pending the error proceeding. Such an order would have come clearly within the meaning of the statute

(Sec. 3931) conferring authority upon the court in every action brought for divorce, to "require the husband to pay any sum necessary to enable the wife to carry on, or defend the action, and for her support, and the support of the children of the parties during its pendency." As shown in Duxstad v. Duxstad, *supra,* disposing of the application for an allowance of counsel fees and temporary alimony pending the proceeding in error, there is a decided conflict in the authorities respecting the right of the appellate court to make such allowances, but the right of the trial court, upon a proper and sufficient showing, to provide for the wife's support and the payment of counsel fees and expenses to enable her to conduct or defend the appellate proceeding is generally recognized. (See I R. C. L., p. 881, Par. 20.)

Had the application filed and acted upon by this court been presented to and granted by the district court the allowances thereby made would very clearly be covered by this bond, and we see no good reason for holding that the allowances made are not covered by the bond because the order therefor was made by this, the appellate court. The purpose of the order was the same as if it had been granted by the district court, namely, to enable the wife to carry on the action and provide for the support of herself and child during its pendency, and it must be held as having the same force and effect within the meaning and scope of the bond, for, although by the terms of the order alimony was allowed pending the proceeding in error, it was manifestly alimony *pendente lite,* since during the period of its allowance the cause remained pending in the trial court, and except that the cause did so remain pending the allowances could not have been made. It is not necessary to hold that, technically, our order was made *in the cause* brought or pending in the district court, though in a broad sense it would not be improper to so designate it. It was required to be enforced by the district court in that cause, and to that end that court, when finally disposing of the

action, entered a judgment for the amount found to be due under the order, and an execution was thereafter issued upon the judgment and returned unsatisfied. To all intents and purposes, within the plain meaning and effect of the condition of the bond, although the order was made in the proceeding in error by the court in which that proceeding was pending, it was an order made in the cause for alimony and counsel fees *pendente lite*.

So far as the judgment allows a recovery for permanent alimony it must be reversed, and in other respects affirmed; but the error relates only to the amount of the recovery and can be corrected by a modification of the judgment without a new trial, for the amount of permanent alimony included in the damages awarded is clearly set forth in the findings. The judgment will therefore be modified by eliminating from the amount thereof the sum of $1,290 which was found to be then due as permanent alimony, and all that part requiring the plaintiff in error to pay $30 each and every month after the date of the judgment until such payments shall amount to $2,241.80. This will allow the judgment to stand for the sum of $918.20. As so modified the judgment will be affirmed. The costs will be apportioned as follows: Three-fourths of the costs in this court, including making up the transcript of the evidence, will be taxed against the defendant in error, and one-fourth against the plaintiff in error; no costs to be allowed either party for briefs.

BEARD, J., and SCOTT, J., concur.